**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 04-8066

TERRANCE N. THOMAS,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 04-CR-07-J)**

Thomas A. Fleener, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the brief), Cheyenne, Wyoming, for Defendant-Appellant.

James C. Anderson, Assistant United States Attorney (Matthew H. Mead, United States Attorney, with him on the brief), Cheyenne, Wyoming, for Plaintiff-Appellee.

Before **O'BRIEN** , **ANDERSON** , and **McCONNELL** , Circuit Judges.

**ANDERSON** , Circuit Judge.

Terrance N. Thomas ("Thomas") was convicted following a jury trial of two counts of using interstate commerce to attempt to persuade a minor to engage in an illegal sexual act, in violation of 18 U.S.C. § 2422(b). Thomas was sentenced to two concurrent sentences of seventy months' imprisonment, five years' supervised release, and $450 in fines and assessments. He appeals his conviction and sentence. We AFFIRM.

## BACKGROUND

On June 12, 2003, Special Agent Flint Waters ("Waters") of the Wyoming Division of Criminal Investigation visited a YAHOO! chat room using the screen name "angelgirl12yo." Waters had created a profile on YAHOO! for "angelgirl12yo" indicating she lived in Cheyenne. While Waters was in the chat room, Thomas, using the screen name "blackass_blk," typed "all Cheyenne ladies represent." Waters testified that he understood this as an invitation for all females from Cheyenne to get in touch with Thomas. Thomas had also created a profile in YAHOO! in which he posted his picture and described himself as 28 years old, single, and an independent contractor. He listed his hobbies as "chillin, clubin, lifting weights, fuckin, working on my website." Appellee's App. at 3.

Waters, still using the screen name angelgirl12yo, and mimicking the

manner in which a preteen girl would conduct an Internet chat, responded to

blackass_blk's request to "represent."  The following chat ensued:

        angelgirl12yo (2:09:37 PM):  Cheyenne
        blackass_blk (2:09:47 PM):  HI
        angelgirl12yo (2:09:50 PM):  Hi
        blackass_blk (2:09:55 PM):  AS [age, sex?]
        angelgirl12yo (2:10:01 PM):  <----------------------
        blackass_blk (2:10:02 PM):  NOT L [not location]
        angelgirl12yo (2:10:03 PM):  lol [laughing out loud]
        blackass_blk (2:10:18 PM):  R U HOME
        angel girl12yo (2:10:24 PM):  ya
        blackass_blk (2:10:29 PM):  ALONE
        angelgirl12yo (2:10:33 PM):  lol ya
        blackass_blk (2:10:51 PM):  WASSUP
        angelgirl12yo (2:11:06 PM):  notta, 12 female cheyenne, lol
        blackass_blk (2:11:08 PM):  CAN I EAT THAT PUSSY
        angelgirl12yo (2:11:14 PM):  dam u all that?
        angelgirl12yo (2:11:27 PM):  rite up front like like that
        blackass_blk (2:11:31 PM):  YEAH GURL!
        blackass_blk (2:11:45 PM):  IM HUNGRY
        angelgirl12yo (2:11:55 PM):  hmmm
        blackass_blk (2:12:31 PM):  CAN I
        angelgirl12yo (2:12:38 PM):  not sure I should
        blackass_blk (2:12:47 PM):  Y
        angelgirl12yo (2:12:53 PM):  don't no you
        blackass_blk (2:13:08 PM):  WE CAN NOW
        angelgirl12yo (2:13:25 PM):  when?
        blackass_blk (2:13:37 PM):  NOW
        angelgirl12yo (2:13:40 PM):  where
        blackass_blk (2:13:53 PM):  WHERE DO U LIVE
        angelgirl12yo (2:13:58 PM):  south side, u?
        blackass_blk (2:14:06 PM):  BASE
        angelgirl12yo (2:14:31 PM):  cool, cant do it at my house, my moms
    mite get told by the neybors
        blackass_blk (2:15:08 PM):  WHERE
        angelgirl12yo (2:15:18 PM):  I don't no, its your idea

blackass_blk (2:15:25 PM):  AT THE PARK
blackass_blk (2:15:48 PM):  NOW
angelgirl12yo (2:15:50 PM):  cool, car?
blackass_blk (2:15:59 PM):  YEAH
angelgirl12yo (2:16:08 PM):  ok
blackass_blk (2:16:22 PM):  WHERE CAN I PICK YOU UP?
angelgirl12yo (2:16:34 PM):  u wanna meet like behind the burger king by my house?
blackass_blk (2:16:54 PM):  WHICH 1
angelgirl12yo (2:17:22 PM):  u know where central gets off I 80 by the holiday inn
blackass_blk (2:17:32 PM):  YEAH
blackass_blk (2:17:46 PM):  U GOING TO BE THERE
angelgirl12yo (2:18:01 PM):  I can, I will watch for the car, what kind ya got?
blackass_blk (2:18:11 PM):  WHITE
blackass_blk (2:18:35 PM):  WHERE DO YOU WANT ME TO MEET U AT
angelgirl12yo (2:18:51 PM):  just pull in behind the bk in like the dirt part and I will see you and come over
blackass_blk (2:19:31 PM):  OK U SEEN MY PROFILE
blackass_blk (2:19:35 PM):  RIGHT
angelgirl12yo (2:19:40 PM):  ya, you sure its cool that I am 12?
blackass_blk (2:20:21 PM):  YEAH
blackass_blk (2:20:30 PM):  OK HERE I COME
angelgirl12yo(2:20:41 PM):  ok, I am kinda short 4 9, 77 pds, see you there in like 10 minutes
blackass_blk (2:20:54 PM):  OK
angelgirl12yo (2:21:34 PM):  hey whats ur name
blackass_blk (2:21:47 PM):  RON
angelgirl12yo (2:21:53 PM):  cool I am angela
blackass_blk (2:22:03 PM):  OK
blackass_blk (2:22:03 PM):  WHT OR BLK
angelgirl12yo (2:22:24 PM):  wht
blackass_blk (2:22:33 PM):  KOOL
angelgirl12yo (2:23:37 PM):  is it on?
blackass_blk (2:23:49 PM):  YEAH
angelgirl12yo (2:23:54 PM):  ok
angelgirl12yo (2:25:54 PM):  u still there?
blackass_blk (2:26:56 PM):  IM ON MY WAY

angelgirl12yo (3:18:48 PM):  well?

Id. at 2.  Officers then set up surveillance at the Burger King and awaited Thomas's arrival.  A white vehicle with a Warren Air Force Base decal driven by a black man entered the parking lot.  Police detained the driver but soon learned that he was not Thomas.  Thomas never showed up at the Burger King, and Waters speculated that he may have seen the police activity in the parking lot and been deterred.  Waters closed the investigation.

However, six months later, on December 22, 2003, Waters was again online in a YAHOO! chat room.  This time he was using the persona "cheygirl13," for whom he had also created a YAHOO! profile.  Waters observed that the persona "blackassblk" was online and available for messaging.  Because of the similarity between this screen name and the screen name he encountered in June ("blackass_blk"), Waters accessed the profile and photo for this persona and learned that "blackassblk" was Thomas.  Cheygirl13 then contacted blackassblk and the following chat took place:

> cheygirl13 (5:30:19 PM):  hi
> blackassblk (5:30:46 PM):  HEY
> blackassblk (5:31:06 PM):  HEY
> cheygirl13 (5:31:09 PM):  I was jus lookin at people in Cheyenne and saw u
> blackassblk (5:31:23 PM):  OH OK
> cheygirl13 (5:31:31 PM):  I am Sheila
> blackassblk (5:32:16 PM):  I'M NIGEL
> cheygirl13 (5:32:22 PM):  nice meetin u
> blackassblk (5:32:38 PM):  U TO

cheygirl13 (5:32:56 PM):  is it a bad time to chat ya?
blackassblk (5:33:12 PM):  NO WHATS ON UR MIND
cheygirl13 (5:33:33 PM):  jus thot u looked nice
blackassblk (5:34:28 PM):  TY [thank you]
cheygirl13 (5:34:35 PM):  yw [your welcome]
blackassblk (5:35:03 PM):  R U OLD ENOUGH TO HAVE SEX
cheygirl13 (5:35:11 PM):  ya I am 13
blackassblk (5:35:27 PM):  DO U
cheygirl13 (5:35:31 PM):  yes
cheygirl13 (5:35:35 PM):  do u? lol
blackassblk (5:35:43 PM):  YES
blackassblk (5:36:00 PM):  DO U WANT TO MEET
cheygirl13 (5:36:16 PM):  don't no if I shoud
blackassblk (5:36:26 PM):  HOW COME
cheygirl13 (5:36:26 PM):  I don't rely no you yet
blackassblk (5:36:34 PM):  OH OK
blackassblk (5:37:04 PM):  WHAT DO YOU WANT TO KNOW?
cheygirl13 (5:37:12 PM):  r u cool?
blackassblk (5:37:23 PM):  YEAH
blackassblk (5:38:07 PM):  I WILL NOT TELL IF U WONT
cheygirl13 (5:38:16 PM):  lol thats cool what all u wanna do
blackassblk (5:38:51 PM):  WHAT DO U LIKE TO DO
cheygirl13 (5:39:21 PM):  I don't know, kinda open I gess
blackassblk (5:40:15 PM):  I LIKE TO GET MY DICK SUCKED
cheygirl13 (5:40:24 PM):  I gess I coud do that
cheygirl13 (5:40:36 PM):  no tellin tho right?
blackassblk (5:40:49 PM):  NAW
blackassblk (5:41:10 PM):  CAN U DO IT GOOD
cheygirl13 (5:41:26 PM):  not sure neva had anyone complane
blackassblk (5:41:37 PM):  OK
blackassblk (5:42:07 PM):  R U HOME BUY UR SELF?
cheygirl13 (5:42:25 PM):  ya
blackassblk (5:42:49 PM):  WHO DO U LIVE WITH
cheygirl13 (5:42:54 PM):  me and mom
blackassblk (5:43:25 PM):  CAN I COME OVER
cheygirl13 (5:43:31 PM):  ok
blackassblk (5:43:53 PM):  WHAT TIME WILL THEY BE HOME
blackassblk (5:44:00 PM):  SHE
cheygirl13 (5:44:10 PM):  mom mite be home at like 7
blackassblk (5:44:30 PM):  KOOL

blackassblk (5:44:55 PM):  CAN I COME TO YOU THAN?
cheygirl13 (5:45:05 PM):  ok
blackassblk (5:45:29 PM):  WHERE R U?
cheygirl13 (5:46:03 PM):  if I give you my address u wont like come here later and tell my mom rite
blackassblk (5:46:35 PM):  Y WOULD I
cheygirl13 (5:46:52 PM):  ok, u no where 25 and thomes is
blackassblk (5:47:05 PM):  YES
cheygirl13 (5:47:18 PM):  ok if u go there I will come out and get u k?
blackassblk (5:48:13 PM):  DO U HAVE A GIRL FRIEND WITH YOU SO U WILL NOT BE SCARED
cheygirl13 (5:48:22 PM):  I can if u want
blackassblk (5:48:47 PM):  UR NOT SCARED R U?
cheygirl13 (5:48:58 PM):  not rely, I jus don't wanna get busted
cheygirl13 (5:49:06 PM):  we don't hafta if u don't want its cool
blackassblk (5:49:49 PM):  OK I'LL BE THERE
cheygirl13 (5:49:57 PM):  ok cool, how long
blackassblk (5:50:13 PM):  20 MIN
cheygirl13 (5:50:20 PM):  ok cool
blackassblk (5:50:40 PM):  WHERE AGAIN?
cheygirl13 (5:50:52 PM):  25 and thomes
blackassblk (5:51:14 PM):  OK

Id. at 4.  Immediately after the chat ended, Waters and other agents established surveillance at the intersection where Thomas was supposed to meet cheygirl13. They observed a white passenger car pull to a curb and turn off its lights. Without turning its lights back on, the car pulled back out, made a U-turn, and then pulled into a parking lot.  Finally, the car pulled back out into the street, at which point the agents stopped the vehicle.  Thomas was driving the car and his two small children were in the back seat.

The defendant was advised of his _Miranda_ rights. He admitted that he was online and had been using the screen name blackassblk to chat with a girl, but he denied knowing that she was 13 and said that he had not caught her age because one of his children had been playing with the computer. He also said he had changed his mind about engaging in sexual activities with her and had "slipped."

Officers then obtained consent to search Thomas's home, where they discovered a locked room containing the computer he had been using. The computer was on. A pornographic movie was playing on the computer and in the foreground was the chat with cheygirl13. Waters seized the computer and searched its hard drive and found the entire chat with cheygirl13 preserved on the computer. The examination also revealed that Thomas had accessed cheygirl13's YAHOO! profile.

Initially, Thomas was charged with one count of violating 18 U.S.C. § 2422(b) for the December 22, 2003, incident. The district court admitted the June 2003 chat between Thomas and angelgirl12yo as Fed. R. Evid. 404(b)[1] evidence. Thomas went to trial on the charge, but it resulted in a hung jury and a mistrial was declared. Thomas was later charged by superseding indictment with

---

[1]Rule 404(b) provides that evidence of "other crimes, wrongs, or acts," while not admissible to prove character, is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

two counts of violating 18 U.S.C. § 2422(b), one count for the June chat and one count for the December chat. The jury found him guilty of both counts.

Thomas appeals his conviction, arguing: (1) that 18 U.S.C. § 2422(b) is unconstitutionally vague and overbroad; (2) that the district court erred in admitting evidence that Thomas traveled to the supposed meeting place with cheygirl13; (3) that there was insufficient evidence to support his conviction on either count; and (4) the government engaged in vindictive prosecution by charging him with two counts in the superseding indictment. Thomas also challenges his sentence, arguing that it violates United States v. Booker, 125 S. Ct. 738 (2005), because the district court sentenced him while operating under the then-mandatory federal Guidelines system.

## DISCUSSION

### A.

**I. Constitutionality of 18 U.S.C. § 2422(b)**

Title 18 U.S.C. § 2422(b) provides:

Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 5 years and not more than 30 years.

18 U.S.C. § 2422(b). Thomas first argues that because the district court and other courts have interpreted the statute as requiring only the intent to entice a minor for illegal sexual activity and not intent to commit the underlying sexual offense, the statute is overbroad in violation of the First Amendment. Thomas thus asserts that the statute "impinges on constitutionally protected speech including the fundamental right to parent." [2] Appellant's Opening Br. at 10. Second, he asserts that the statute is void for vagueness because the terms are unclear, causing "men of common intelligence [to] necessarily guess at its meaning." Id.

We review challenges to a statute's constitutionality de novo. Ward v. Utah, 398 F.3d 1239, 1245 (10th Cir. 2005). The overbreadth doctrine "prohibits a statute from making criminal otherwise innocent and constitutionally protected conduct." United States v. Pinelli, 890 F.2d 1461, 1472 (10th Cir. 1989). "The crucial question then is whether the statute sweeps within its prohibitions conduct that may not be punished because of the protection of the first and fourteenth

---

[2]Thomas cites the specific example of a parent sending e-mail messages about birth control to an underage daughter if the parent knows the daughter has a boyfriend who is older. Thomas argues that the parent, who had no intent to engage in the underlying illegal sexual act, would nonetheless be guilty of violating the statute because by discussing birth control, the parent is enticing, persuading, or inducing the daughter to engage in illegal sex with her older boyfriend. This argument, which stems from the Supreme Court's discussion and invalidation of the Communications Decency Act in Reno v. ACLU, 521 U.S. 844, 878 (1997), has been rejected in the 18 U.S.C. § 2422(b) context. See United States v. Panfil, 338 F.3d 1229, 1301 (11th Cir. 2003).

amendments." Id. Similarly, the "void for vagueness doctrine requires that a penal statute define a criminal offense with sufficient specificity that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. at 1470. The Supreme Court "has recognized that the most important aspect of the vagueness doctrine 'is not the actual notice [to citizens of prohibited conduct], but the other principal elements of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" Id. (quoting Smith v. Goguen , 415 U.S. 566, 574 (1974)).

Although we have not spoken on this question, Thomas points to no case in which a court presented with an overbreadth or vagueness challenge to § 2422(b) has deemed the statute unconstitutional. [3] See, e.g. , United States v. Dhingra , 371

_____

[3]Thomas relies on the Fifth Circuit case United States v. Farner, 251 F.3d 510, 513 (5th Cir. 2001), in which the court states that "the district court correctly concluded from the stipulated evidence, beyond a reasonable doubt, that Farner *intended to engage in sexual acts* with a 14-year-old girl and that he took substantial steps toward committing the crime." Id. (emphasis added). Thomas argues that Farner thus holds that one must intend to engage in the underlying illegal sexual act to have the criminal intent required by 18 U.S.C. § 2422(b). Thomas asserts that Farner creates tension with other circuits that have held that the intent must be only to persuade, induce, or entice, and therefore the statute has an unclear meaning and is void for vagueness. We reject this argument; first, because we agree with the district court's determination below that the language quoted above is dicta rather than the holding of Farner, and second, because even if it can be read to create tension with the other circuits, this does not in and of itself render the statute void for vagueness. Pinelli, 890 F.2d at 1471.

F.3d 557, 561-63 (9th Cir. 2004) (overbreadth challenge fails because statute regulates conduct—inducement of minors for sexual activity—not speech; vagueness argument also fails); United States v. Meek, 366 F.3d 705, 720-22 (9th Cir. 2004) (same); Panfil, 338 F.3d at 1300-01 (statute not vague or overbroad because its terms have plain and ordinary meanings and statute includes scienter requirement); United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000) (no overbreadth or ambiguity problems because statute only applies to those who target minors, and "the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sexual acts").

We agree with the reasoning of the circuits that have already considered and upheld the constitutionality of the statute in question. Section 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act. Contrary to Thomas's assertions, this interpretation does not render the statute unconstitutionally overbroad or void for vagueness.

## II.    Evidence that Thomas traveled to meet cheygirl13

Thomas next argues that the court abused its discretion by admitting Waters' testimony that Thomas was stopped near the intersection where he planned to meet cheygirl13. He asserts that because the district court ruled that

the government needed only to prove intent to entice, not intent to engage in the underlying sexual act, this evidence was admitted in violation of Fed. R. Evid. 401, because it was irrelevant, and Fed. R. Evid. 403, because it was more prejudicial than probative. The defendant filed a motion in limine to exclude the testimony below, but the court denied the motion, stating, "I view it as additional evidence of a substantial step in terms of the offense charged, but, at any rate, certainly evidence that is intertwined with the offense." Tr. of Jury Trial, R. Vol. 5 at 107.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. United States v. Hernandez-Herrera, 952 F.2d 342, 343 (10th Cir. 1991). We will not overturn an evidentiary ruling "absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." United States v. Jenkins, 313 F.3d 549, 559 (10th Cir. 2002).

The district court did not abuse its discretion in admitting Waters' testimony about where he stopped Thomas. The evidence may not have been required to prove that Thomas was guilty of the second count of violating § 2422(b), considering that he was convicted on the first count without any proof that he traveled to meet angelgirl12yo. See infra Part III. The evidence nonetheless helped demonstrate his intent. Thomas would not have been at the

-13-

supposed meeting place had he not intended to entice cheygirl13 to meet him there to engage in oral sex.    See Dhingra, 371 F.3d at 565 (agent's testimony that defendant actually engaged in sexual activity with minor admissible to prove enticement charge even though "evidence of sexual contact is not required under § 2422(b)").  Moreover, defendant has not sufficiently identified how this testimony presented "unfair prejudice," except to say that it permitted the jury to focus on Thomas's intent to actually engage in sexual activities with the girl. Assuming the evidence can be viewed as prejudicial, it is outweighed by its probative value.

Finally, we reject Thomas's argument that the evidentiary ruling was erroneous because the judge failed to articulate his Rule 403 balancing analysis. Thomas acknowledges in his brief that we have consistently upheld implicit Fed. R. Evid. 403 determinations when they are supported by the record.    United States v. Lazcano-Villalobos, 175 F.3d 838, 846-47 (10th Cir. 1999).  Such is the case here.  The district court did not err in admitting this evidence.

## III.    Sufficiency of the evidence

Thomas next argues that there was insufficient evidence to convict him of either count, but particularly of count one, the June 2003 chat with angelgirl12yo. He contends that there was no proof that he knew how old angelgirl12yo was

because the age section of her YAHOO! profile was left blank, and he argues that there was no evidence, as there was for the second count, that he actually attempted to meet angelgirl12yo. [4]

We review sufficiency of the evidence claims de novo. United States v. Munro, 394 F.3d 865, 869 (10th Cir.), cert. denied, 73 U.S.L.W. 3631 (U.S. Apr. 25, 2005) (No. 04-9423). "In doing so, we view all evidence in the light most favorable to the prevailing party below. . . . Ultimately, we must determine whether the evidence and all reasonable inferences drawn therefrom could allow a reasonable jury to find [Thomas] guilty beyond a reasonable doubt." Id.

We recently set forth the four elements that must be proven to show a violation of 18 U.S.C. § 2422(b): (1) use of a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) any individual who is younger than 18; (4) to engage in any sexual activity for which any person can be charged with a criminal offense, or attempting to do so. Id. Thomas was charged with attempt in this case because he could not have actually enticed a minor because his online chats were with an undercover police officer. Therefore, to

---

[4]The court specifically instructed the jury not to consider the evidence pertaining to count two when determining guilt on count one. The court stated: "A separate crime or offense is charged against the defendant in each count of the indictment. Each offense, and the evidence pertaining to it, should be considered separately. The fact that you may find the accused guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense." Tr. of Jury Trial, R. Vol. 7 at 316-17.

prove attempt, "the government had to show that [defendant] took a 'substantial step' towards the commission of the ultimate crime, and that such step was more than mere preparation." Id. The issue here then is whether there was sufficient evidence that Thomas took a "substantial step" in each count towards the commission of the crime.

The court gave the jury the following instructions regarding the terms in the statute:

> 'Entice' is defined as beguiling by arousing hope or desire. A synonym of entice is lure.
> 'Induce' is defined as leading or moving by persuasion or influence. A synonym of induce is to prevail upon.
> 'Persuade' is defined as causing someone to do something by means of entreaty, argument, or reasoning. A synonym of persuade is convince.

Tr. of Jury Trial, R. Vol. 7 at 321. We have reviewed the evidence in this case, particularly the transcripts of the YAHOO! messaging sessions, and conclude that a reasonable jury had sufficient evidence to convict Thomas of both counts using the definitions set forth above.

As to the first count, it is apparent that Thomas initiated the sexual conversation by asking, in crude terms, to engage in oral sex moments after angelgirl12yo confirmed that she was a 12-year-old girl living near him. After angelgirl12yo questioned blackass_blk's boldness and said she was unsure about the proposal because she did not know him, Thomas insisted again that they have

oral sex, and do it "now." Then, Thomas immediately asked the girl where she lived and suggested that they meet at the park, again stating that they should meet "now." See Munro, 394 F.3d at 869-70. Thomas took a substantial step in an attempt to induce, entice, and persuade by writing and sending his insistent messages.

We do not agree with Thomas's argument that "[w]ith particular regards to Count One, there is simply no evidence that Mr. Thomas intended to engage in anything more than harmless banter." Appellant's Opening Br. at 19. Thomas crossed the line from "harmless banter" to inducement the moment he began making arrangements to meet angelgirl12yo, notwithstanding the lack of evidence that he traveled to the supposed meeting place. See United States v. Bailey, 228 F.3d 637, 639-40 (6th Cir. 2000) (sufficient evidence of substantial step toward enticing minors where defendant sent e-mails to minors proposing oral sex but did not ever travel to meet the girls).

Moreover, sufficient evidence was presented for the jury to conclude that Thomas believed angelgirl12yo was 12 years old. Aside from her age being in her screen name, Special Agent Waters informed Thomas twice of her age, at one time asking, "you sure its [sic] cool that I am 12?" Appellee's App. at 2. Waters also gave Thomas a physical description of angelgirl12yo as being four feet, nine inches tall and seventy-seven pounds, the size of a typical preteen girl.

Finally, we conclude that there was sufficient evidence to find Thomas guilty of the second count of enticement, for all of the same reasons as mentioned above. The substantial step on this count is strengthened by the evidence of Thomas's venture to meet cheygirl13. We are therefore unpersuaded by Thomas's sufficiency of the evidence argument.

## IV.     Vindictive prosecution

Thomas's final challenge to his conviction is that the United States engaged in vindictive prosecution by adding an additional count to the indictment after a mistrial was declared in the original trial.

We view a vindictive prosecution claim as a mixed question of law and fact and review a district court's resolution of the issue under the clearly erroneous standard. United States v. Wood, 36 F.3d 945, 946 (10th Cir. 1994). A defendant may not be penalized for exercising constitutional or statutory rights during the course of a criminal proceeding. United States v. Raymer, 941 F.2d 1031,1040 (10th Cir. 1991).

> To punish a person because he has done what the law plainly allows
> him to do is a due process violation of the most basic sort, and for an
> agent of the State to pursue a course of action whose objective is to
> penalize a person's reliance on his legal rights is 'patently
> unconstitutional.'

Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 32 n.20 (1973) (citation omitted)). A defendant may demonstrate a due process violation by showing either (1) actual vindictiveness or (2) a realistic likelihood of vindictiveness which gives rise to a presumption of vindictiveness. Raymer, 941 F.2d at 1040. Once the defendant has made this showing, "the burden shifts to the prosecution to justify its charging decisions with legitimate, articulable, objective reasons." Wood, 36 F.3d at 946 (further quotation omitted).

We have examined the issue of prosecutorial vindictiveness in a context similar to Thomas's case, where the first trial resulted in a hung jury and the prosecution thereafter added charges to the indictment. We stated:

> Generally, where, as here, a modification in a charging decision follows a mistrial occurring for neutral reasons, such as a hung jury, and without objection from the government, no presumption of vindictiveness is raised because there is no reason why the prosecutor would consider the defendant responsible for the need for a new trial. Nevertheless, the Supreme Court has refused to adopt *per se* rules in the prosecutorial vindictiveness context. Consequently, to determine whether a reasonable likelihood of vindictiveness exists, we must look to the totality of the objective circumstances surrounding the prosecutorial decision.

United States v. Contreras, 108 F.3d 1255, 1263 (10th Cir. 1997) (citations omitted).

Thomas argues that a realistic likelihood of vindictiveness exists because the prosecution had all of the evidence pertaining to the June 2003 chat before the

-19-

first trial began and only charged him with it after he exercised his right to plead not guilty. He further asserts that the addition of the second charge resulted in an increase in his sentence.

Examining the totality of the circumstances, we cannot agree that there is a realistic likelihood of vindictiveness. The mistrial in Thomas's first case was declared because the jury could not reach a verdict, a neutral reason, and not because Thomas exercised a specific right.

Even if we assumed arguendo that a presumption of vindictiveness is appropriate here, the government has justified its decisions. At a hearing on this issue in the district court, the prosecutor told the court that he added the charge after speaking to the jury after the first trial was over. The jury members told the attorneys that they believed that Thomas's first chat with angelgirl12yo was the more egregious of the two. The prosecutor also told the court that when he subsequently decided to add the charge, he spoke to the probation office and was informed—erroneously, it was discovered much later—that the additional charge would not increase Thomas's punishment. Thomas has therefore not demonstrated that the superseding indictment was a result of prosecutorial vindictiveness.

# B.

### I. Booker claim

United States v. Booker held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756. District courts post-Booker are required to consult the Guidelines in fashioning sentences, but they are not required to sentence within the Guidelines range. United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). Constitutional Booker error occurs when the district court "re[lies] on judge-found facts . . . to enhance a defendant's sentence mandatorily." Id. By contrast, non-constitutional Booker error occurs when a sentencing court applies the Guidelines in a mandatory fashion, "even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." Id. at 731-32.

Thomas asserts only non-constitutional Booker error in his case. The facts upon which his sentencing enhancements were based—conviction on two separate counts and use of a computer in the commission of the crime—were established

by the jury verdict [5] and not by judicial fact-finding. He argues that he would have received a less harsh sentence had the district court been acting in a post-Booker regime. He urges us to vacate his sentence and remand to the district court "for a sentencing which recognizes the mere advisory role of the Guidelines." Appellant's Opening Br. at 23.

The base offense level for Thomas's offense is 21 under United States Sentencing Commission, Guidelines Manual ("USSG") §§2G1.1(c)(3) and 2A3.2(b)(2)(B). Based upon the jury's findings that Thomas was guilty of two separate counts and that he used a computer in the commission of the offense, the district court assessed two, two-level increases under USSG §3D1.4 and USSG §2A3.2(b)(3), respectively. The district court declined to assess a third two-level increase for unduly influencing his purported victims. The defendant's total offense level was 25, and with a criminal history category of three, he was placed in a sentencing range of 70 to 87 months. The court sentenced him to 70 months, at the low end of the range, ten months more than the minimum of five years required by 18 U.S.C. § 2422(b).

The defendant objected to the two-level multiple-count upward adjustment in the PSR, arguing that the court should treat the two offenses as part of a

_____

[5]The Verdict Form completed by the jury specifically describes Thomas's criminal conduct as taking place during an "Internet chat." R. Vol. 1, doc. 86.

"common scheme or plan" under USSG §3D1.2(b). At the sentencing hearing, the United States joined the defendant's objection to the multiple-count adjustment, which was based on the jury's conviction of Thomas on two counts. The court denied the objections, finding there was no evidence of a common scheme because the offenses were separated by a substantial time period. Nonetheless, when it imposed the sentence, the court stated:

> [E]xamining the presentence report in this case, it is difficult to find a case where circumstances could have conspired more against the defendant for a harsh application of the guidelines in this case. . . . [I]t seems to me if you're trying to conceive of every harsh effect that could occur under the guidelines in a case, they have been applied and do, on their face, appear to apply to Mr. Thomas.

Tr. of Sentencing Hr'g, R. Vol. 9 at 22-24.

Because Thomas did not raise this argument below, we review for plain error. Booker, 125 S. Ct. at 769 ("[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."); Gonzalez-Huerta, 403 F.3d at 732. "'Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Gonzalez-Huerta, 403 F.3d at 732 (quoting United States v. Burbage, 365 F.3d 1174, 1180 (10th Cir.), cert. denied, 125 S. Ct. 510 (2004)).

Thomas has met the first two prongs of the plain-error test: error occurred in this case, because the district court was operating under Guidelines it thought were mandatory, and that error was plain. See United States v. Dazey, 403 F.3d 1147, 1174-75 (10th Cir. 2005). However, because we conclude below that Thomas cannot meet the fourth prong of plain-error review, we need not decide whether his substantial rights were affected. See United States v. Cotton, 535 U.S. 625, 632-33 (2002); Gonzalez-Huerta, 403 F.3d at 736.

Under the fourth prong, the reviewing court may in its discretion correct an error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks omitted). The defendant bears the burden of showing that we should exercise our discretion. Dazey, 403 F.3d at 1178. "Where only non-constitutional Booker error is at issue, this standard is especially demanding. We will not notice non-constitutional Booker error unless the defendant establishes the error is 'particularly egregious' and that our failure to correct it would result in a 'miscarriage of justice.'" United States v. Dowlin, Nos. 03-8038 & 03-8055, __ F.3d __, 2005 WL 1155882, at *18 (10th Cir. May 17, 2005).

We have identified several non-exclusive factors that might show that a defendant has satisfied the fourth prong: a sentence increased substantially based on a Booker error, a showing that the district court would likely impose a

-24-

significantly lighter sentence on remand, a substantial lack of evidence to support the sentence the Guidelines required the district court to impose, and/or a showing that objective consideration of the 18 U.S.C. § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines. Dowlin, 2005 WL 1155882, at *18 (citations omitted).

This case is a closer call than many. However, considering that we must find a "particularly egregious" error in a case of non-constitutional Booker error, this case does not warrant a remand. First, Thomas's sentence was not increased substantially based on the mandatory application of the Guidelines. Under § 2422(b), the mandatory minimum sentence is 60 months, and he was sentenced to just ten months more than the minimum. [6] Cf. Dazey, 403 F.3d at 1178-79 (mandatory enhancement based on a judicial finding increased defendant's offense level by twenty levels, a consideration that helped show satisfaction of fourth prong). Second, we are not convinced the judge would impose a lighter sentence on remand. Although the district court mentioned the "harsh" effect of the Guidelines in this case, it further noted: "The court's [greater] concern . . .

---

[6]We have noted that this factor is ordinarily not present for consideration when a defendant raises a non-constitutional Booker error. United States v. Clifton, No. 04-2046, __ F.3d __, 2005 WL 941581, at *6 (10th Cir. Apr. 25, 2005). In this case, however, this factor is useful because we are able to compare the sentence Thomas received under the mandatory Guidelines, or, as Thomas argues, as a result of non-constitutional Booker error, and the minimum sentence he would in any event have received based on the mandates of the statute.

[is] that we are all familiar with [18 U.S.C. § 2422(b)] and its influence upon any departure on the part of the court." Tr. of Sentencing Hr'g, R. Vol. 9 at 24. The judge thus appears to feel bound more by the minimum sentence in the statute, which was unaffected by Booker, than by the application of the Guidelines. Third, as previously discussed, sufficient evidence supported conviction on both counts in this case; therefore, the sentence was supported by substantial evidence. Finally, there is evidence in the record that the district court considered the history and characteristics of the defendant at sentencing, see 18 U.S.C. § 3553(a)(1), including that the crime may have resulted from Thomas's boredom with life or "feeling that he was a victim of a system that made him care for the children while his wife was . . . away on [military] assignments." Tr. of Sentencing Hr'g, R. Vol. 9 at 27. Despite this, the court still sentenced Thomas to seventy months, which indicates that further objective consideration of the § 3553(a) factors would not warrant a departure. In sum, Thomas has not demonstrated that this is the "particularly egregious" case in which we should exercise our discretion to correct the Booker error.

**CONCLUSION**

For all of the foregoing reasons, we AFFIRM Thomas's conviction and sentence.