**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RIGOBERTO SOTO-ARREOLA,

Defendant-Appellant.

No. 11-3348
(D.C. No. 2:11-CR-20051-KHV-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

In 2011, Rigoberto Soto-Arreola pleaded guilty to one count of illegal reentry after deportation subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a), (b). Although the government recommended a sentence of seventy to eighty-seven months—the advisory range under the United States Sentencing Guidelines ("U.S.S.G.")—the district court varied upward and imposed a sentence of 120 months. On appeal, Mr. Soto-Arreola contests the procedural reasonableness of his sentence,

---

[*] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

arguing that the district court's upward variance was impermissibly based upon unadorned reports of prior arrests that were referenced in his presentence report ("PSR"). Due to Mr. Soto-Arreola's failure to preserve this objection, we apply the plain-error standard; under it, we affirm.

**I**

**A**

Although Mr. Soto-Arreola is now in his mid-twenties, his brushes with the law began much earlier. According to his PSR, he was the subject of eight separate juvenile adjudications in Kansas state and municipal courts. *See* R., Vol. 3, at 7–9 (Presentence Investigation Report, filed Nov. 4, 2011). At age fourteen, he was charged with interference with city officers and driving without a license and was assessed monetary fines. At fifteen, he was found guilty of criminal damage to property and theft and was placed on twelve months' probation for each offense. He was also fined for several traffic violations. At sixteen, he was charged with criminal damage to property and placed on Juvenile Intensive Supervised Probation for twenty-four months. At seventeen, he was fined for numerous traffic violations and also received an unknown sentence for a charge of disorderly conduct.

When Mr. Soto-Arreola turned eighteen, his criminal behavior continued and intensified. According to the PSR, he was twice cited for transporting an open container of alcohol, once while a passenger in a stolen vehicle. He was also convicted of possession of methamphetamine and obstructing the legal process. For the former

offense, he was sentenced to fifteen months' imprisonment; for the latter, eight months' imprisonment followed by twelve months of supervised release. The two sentences were set to run concurrently, though Mr. Soto-Arreola was granted eighteen months' probation for each offense. He failed to report for bond supervision, however. Consequently, his probation was revoked, and he was ordered to serve his original sentences.

At age twenty, Mr. Soto-Arreola was convicted of aggravated battery for shooting an individual in the arm. Although sentenced to twelve months' imprisonment, he was paroled to a detainer in August 2010, charged by United States Immigration and Customs Enforcement with entry without inspection, and deported to Mexico in September 2010. He returned to the United States without authorization sometime thereafter. In March 2011, at age twenty-three, he pleaded no contest in state court to a charge of obstructing the legal process and received a deferred sentence.

In July 2011, Mr. Soto-Arreola was arrested by federal authorities and charged with illegal reentry after deportation subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a), (b). He entered a guilty plea, and in anticipation of sentencing, the PSR was prepared. The PSR assigned Mr. Soto-Arreola a total offense level of twenty-one.[1] Only four of his adult criminal convictions (and none of his juvenile offenses) garnered criminal history points, which totaled eight. Two criminal

---

[1] This consisted of a base offense level of eight under U.S.S.G. § 2L1.2, plus a sixteen-level enhancement under § 2L1.2 because his prior aggravated-battery conviction qualified as a crime of violence, minus three levels for acceptance of responsibility under § 3E1.1.

history points were added because he illegally reentered the United States while still on parole for his aggravated-battery conviction. He was assigned a criminal history category of V, yielding an advisory Guidelines range of seventy to eighty-seven months.

Pages twelve and thirteen (paragraphs forty-one through forty-seven) of the PSR also noted seven other arrests of Mr. Soto-Arreola throughout his life. We call this portion of the PSR the "other-arrests section." There were two arrests at age thirteen for theft and criminal damage; one at age fourteen for possession of crack cocaine; one at age seventeen for reckless driving; one at age eighteen for burglary; and one at age twenty-three for discharge of a firearm into an occupied dwelling and for felony obstruction. The notations in the PSR concerning the first three offenses briefly detailed the circumstances surrounding them.[2] By contrast, the notations for the latter three offenses were

---

[2]     For the charge of theft, the PSR stated that "[a]ccording to a Kansas Standard Arrest Report, the defendant stuffed a pair of Southpole jeans down his pants and walked out the east doors of J.C. Penney without paying for them. The defendant was not arrested in this matter, he was issued a summons to appear in Court." R., Vol. 3, at 14. The PSR concluded, "No further information has been provided to the U.S. Probation Office regarding this matter," and noted the disposition of the case as "Unknown." *Id.*

For the charge of criminal damage, the PSR stated that "[a]ccording to an Offense Report provided by the Topeka Police Department," Mr. Soto-Arreola was caught "shooting a BB gun at [a victim's] vehicle." *Id.* Officers contacted Mr. Soto-Arreola's father, who turned over the gun and asked that it be destroyed. The PSR concluded that "[t]he victim decided she did not want to pursue charges," and noted the disposition of the case as "Not prosecuted." *Id.*

For the charge of possession of crack cocaine, the PSR stated that "[a]ccording to a Kansas Standard Arrest Report provided by the Topeka, Kansas Police Department," Mr. Soto-Arreola was a passenger in a stolen vehicle being driven by his cousin, Vicente

(continued...)

accompanied only by the statement, "No further information has been provided to the U.S. Probation Office." R., Vol. 3, at 15. None of these arrests resulted in convictions, and none garnered criminal history points. The seventh arrest mentioned in this section was for entry without inspection, for which Mr. Soto-Arreola was deported to Mexico in September 2010. This offense, too, did not garner criminal history points.

A sentencing hearing was held in November 2011. Mr. Soto-Arreola asked the district court to impose a sentence of seventy months. The government recommended a sentence within the Guidelines range of seventy to eighty-seven months. The district court declined to follow either recommendation, instead imposing a sentence of 120 months. Because the court's statements at sentencing form the basis of Mr. Soto-Arreola's appeal, we review the sentencing hearing in relevant detail.

**B**

At the beginning of the hearing, the court asked defense counsel whether Mr. Soto-Arreola had any objections to the PSR. Counsel responded, "No," and acknowledged that the Guidelines range was properly calculated. R., Vol. 2, at 5 (Tr. of Sentencing Proceedings, dated Nov. 15, 2011). The court then stated,

> Just so you know, this defendant has a very lengthy criminal history. He has a drug felony. He's got another violent felony. He apparently

---

[2](...continued)
Martinez. *Id.* at 15. Police stopped the vehicle and discovered a large quantity of cocaine in Mr. Martinez's pocket. During an interview, Mr. Soto-Arreola "admitted Martinez provided him with crack cocaine and that they smoked a rock earlier." *Id.* Mr. Martinez was arrested and charged with numerous offenses. Mr. Soto-Arreola "was transported to his residence and released to his parents without being charged." *Id.*

is a gang member. He's got past revocations of supervision. He has a history of substance abuse. It looks to me like he's at a high risk to recidivate and probably a sentence of higher than the guideline range is appropriate. So in addressing what you think the sentence should be, please address those concerns.

*Id.*

Defense counsel responded by detailing some of Mr. Soto-Arreola's personal history and requesting a seventy-month sentence. The government followed up with its own recommendation for a within-Guidelines sentence. The government also highlighted

other criminal activity of this defendant where there were either no charges pursued or -- various instances were dismissed, beginning on page 12 of the presentence report and carrying over to page 13. The one of obviously great concern is in January of this year with some sort of a shooting into an occupied dwelling in Topeka. I don't know why that case was not pursued.

*Id.* at 11.

During allocution, the court told Mr. Soto-Arreola, "[I]t looks like you have total contempt for American law. You have been in trouble since you were 14." *Id.* at 14. Confirming that Mr. Soto-Arreola was then twenty-three years old, the court continued:

So it's been nonstop for the last nine years with no evidence of any willingness or ability to lawfully support yourself or your family. You committed this crime while you were on parole. As I said before, it looks to me that you're a great danger to society because of your lengthy criminal history, your violent background, your drug-related felony, your gang affiliations; and so even though the custody range is 70 to 87 months, the sentence I'm proposing is 120 months. The custody sentence under the statute is up to 20 years, and this is right in the middle of that.

*Id.* at 14–15.

In response, defense counsel objected "to any departure or variance upward from the guideline range" and stated that "the primary reasons the court is using to justify a sentence above the guideline range are all completely accounted for with respect to the offense level calculation in this case in the first place and the criminal history calculation in the second place." *Id.* at 15. The court noted its understanding of the objection but found that a longer sentence was appropriate, stating,

> [W]hen I look at all the factors under Section 3553(a), I am underscoring the seriousness of his criminal history, the need to provide protection to the public from further crimes by this defendant, and the fact that I believe he's at an extremely high risk to recidivate because of his gang membership and the history of pretty much unrelenting criminal activity since a very young age, at 14.

*Id.* at 16–17.

The court invited further comment from the parties on the proposed sentence. The government highlighted "the nature and circumstances of the offense as well as the history and characteristics of the defendant, particularly the lack of employment, the gang membership, the long-time criminal history." *Id.* at 17. It continued:

> [T]he presentence report, beginning at Paragraph 24 details all of his criminal history, and that continues until Paragraph 37, with each of those being separate convictions. Then Paragraphs 41 through 47 are additional incidents of contact that the defendant had with law enforcement where either charges were not pursued or charges were dismissed, with one of those being an entry without inspection in August of 2010, and he was then deported in September of 2010, which would have been an offense similar to this offense, and then based upon the type of criminal history and the crimes of which he's been convicted, as well as the various revocations and committing this offense while on supervision, it appears as though there needs to be extra attention paid to afford adequate deterrence to criminal conduct

and to protect the public from further crimes of this defendant based upon the types of convictions that he's had.

*Id.* at 17–18.

The court stated in response,

> Also his drug use, I think, makes him at a higher risk of recidivism, but yes, I agree with what you just said; and, I mean, it's obvious to me that much of this defendant's prior criminal history and his contacts with law enforcement are not scored in any way in the guideline calculations.

*Id.* at 18. Having considered the factors at 18 U.S.C. § 3553(a), the court went on to impose a 120-month sentence.

Mr. Soto-Arreola timely appealed.[3]

---

[3] We appointed counsel to represent Mr. Soto-Arreola on appeal. After Mr. Soto-Arreola and the government filed principal briefs, counsel for Mr. Soto-Arreola moved to withdraw, citing a breakdown in communication and disagreement over appellate strategy. We invited Mr. Soto-Arreola to respond, which he did, indicating his desire to proceed pro se and to file a pro se supplemental brief. Noting among other things that principal briefs had already been filed and that there was no constitutional right to hybrid representation (i.e., a defendant's simultaneous representation by counsel and himself acting pro se), we denied counsel's motion to withdraw and did not grant Mr. Soto-Arreola's pro se request to file a supplemental brief. Mr. Soto-Arreola then submitted a letter to this court, again seeking permission to file a pro se supplemental brief. We construed the letter as a motion to reconsider our denial of counsel's motion to withdraw, and we denied it. In the letter, Mr. Soto-Arreola stated that he is "entitled to a degree of representation that is consistent with the tenets of the Sixth Amendment" and that appointed counsel's representation "falls short of those tenets." Letter from Mr. Soto-Arreola, at 1 (filed June 4, 2012). To the extent that Mr. Soto-Arreola wishes to articulate a claim of ineffective assistance of appellate counsel, there will be time enough for that, though it is not in this proceeding. He will have the opportunity on collateral review to present this claim, at which time the district court will be poised to develop an adequate factual record. *See United States v. Hahn*, 359 F.3d 1315, 1327 n.13 (10th Cir. 2004) (en banc) (per curiam) ("Generally, we only consider ineffective assistance of counsel claims on collateral review.").

## II

When a defendant challenges his sentence on appeal, our task is to determine whether the sentence is reasonable. *See United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir. 2010). Review for reasonableness embraces two distinct concepts: procedural reasonableness and substantive reasonableness. *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009); *see United States v. McGehee*, 672 F.3d 860, 875 (10th Cir. 2012). Mr. Soto-Arreola's appeal implicates only the former.

"Procedural reasonableness focuses on whether the district court erred in 'calculating or explaining the sentence.'" *United States v. Halliday*, 665 F.3d 1219, 1222 (10th Cir. 2011) (quoting *Friedman*, 554 F.3d at 1307). Examples of procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)) (internal quotation marks omitted). And it is most significant for resolving Mr. Soto-Arreola's challenge that "[g]enerally, a district court's use of an improper factor invokes procedural review." *Id.*

Typically, we apply a deferential abuse-of-discretion standard when reviewing sentences for reasonableness. *See id.* However, if a defendant fails to lodge a contemporaneous objection to the district court's commission of a procedural error, then

plain-error review applies.  *See United States v. Robertson*, 568 F.3d 1203, 1210 (10th

Cir. 2009) ("We have consistently held that plain error review obtains when counsel fails

to render a contemporaneous objection to a procedural sentencing error." (quoting *United*

*States v. Uscanga-Mora*, 562 F.3d 1289, 1293 (10th Cir. 2009)) (internal quotation marks

omitted)); *see also United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007)

("[W]hile a defendant need not object after pronouncement of sentence based on

substantive reasonableness, i.e. the length of that sentence, he must object to any

procedural flaws or receive, on appeal, only plain error review.").  Under the plain-error

standard, we may reverse only if a defendant demonstrates (1) error (2) that is plain, (3)

that prejudices his substantial rights, and (4) that "seriously affects the fairness, integrity,

or public reputation of judicial proceedings." *Robertson*, 568 F.3d at 1210.

On appeal, Mr. Soto-Arreola contends that the district court procedurally erred by

basing its sentencing decision on the other-arrests section of the PSR.  He argues that

prior unconvicted conduct, evidenced only by "bare reports of arrests," cannot be the

basis for an upward variance.  Aplt. Br. at 11.  Mr. Soto-Arreola did not register this

specific objection with the district court, so we will review his sentencing challenge for

plain error.  Although Mr. Soto-Arreola did object to the district court's decision to vary

upward, arguing that his offense level and criminal history category adequately accounted

for the court's concerns about his lengthy criminal history, this is insufficient.  Our

precedent requires a defendant "to specifically object to a procedural error in order to

preserve that issue for our review." *Robertson*, 568 F.3d at 1210.  Here, the district court

was never alerted to the alleged error—reliance on bare arrest records—that Mr. Soto-Arreola now assails on appeal, and consequently, the court never had the opportunity to correct the alleged error in the first instance. *See Uscanga-Mora*, 562 F.3d at 1294.

Mr. Soto-Arreola thus faces an uphill battle. He must demonstrate to our satisfaction that all four prongs of the plain-error test are met. For the reasons below, we conclude that he at least fails two prongs of the test: the second prong because any error by the district court was not plain, and the fourth prong because he cannot show (and indeed, has not argued) that the district court would impose a significantly lesser sentence on remand.

## A

The second prong of plain-error review requires the defendant to demonstrate that the district court's error was plain, that is, "clear or obvious under well-settled law." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005) (quoting *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000)) (internal quotation marks omitted). We conclude that, assuming *arguendo* the district court relied on the other-arrests section of the PSR in imposing the upward variance, it did not plainly err in doing so.

We have previously entertained sentencing challenges like Mr. Soto-Arreola's. In *United States v. Mateo*, 471 F.3d 1162, 1165–66 (10th Cir. 2006), the district court varied upward from a Guidelines sentence, relying in part on the PSR's notations concerning several prior arrests of the defendant, even though none of the arrests resulted in

convictions. On appeal, the defendant argued that his sentence was procedurally unreasonable and, as support, pointed to U.S.S.G. § 4A1.3. Section 4A1.3 pertains to upward departures from advisory Guidelines sentences. It allows consideration of "[p]rior similar adult criminal conduct not resulting in a criminal conviction," U.S.S.G. § 4A1.3(a)(2)(E), but prohibits consideration of "[a] prior arrest record itself" for purposes of an upward departure, *id.* § 4A1.3(a)(3). Although the district court in *Mateo* had varied, not departed, upward,[4] the defendant pointed out that one of the factors the sentencing court must consider under § 3553(a) is "any pertinent policy statement" from the Guidelines. *Mateo*, 471 F.3d at 1167 (quoting 18 U.S.C. § 3553(a)(5)) (internal quotation marks omitted). He therefore argued that it was unreasonable for the district court to base its upward-variance decision on his prior arrest record.

We rejected the defendant's argument. We found that the district court

> did not rely on Mr. Mateo's arrest record itself in making its determination as to the reasonableness of the advisory Guidelines sentence. Rather, it extrapolated from the uncontested facts in the PSR—including the number, frequency, and seriousness of Mr. Mateo's various arrests and convictions—to draw conclusions about characteristics relevant to sentencing factors enumerated in 18 U.S.C. § 3553(a).

*Id.*

---

[4] As we explained in *United States v. Sells*, "[a] departure occurs 'when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines.'" 541 F.3d 1227, 1237 n.2 (10th Cir. 2008) (quoting *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007)). "A variance occurs '[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors.'" *Id.* (alteration in original) (quoting *Atencio*, 476 F.3d at 1101 n.1).

Three years later, we decided *Robertson*. That case concerned a district court's decision to depart upward from the advisory Guidelines sentence—a decision based in part on the PSR's reference to prior conduct (criminal discharge of a firearm) for which the defendant had been arrested but not convicted. On appeal, the defendant challenged his sentence as procedurally unreasonable, citing U.S.S.G. § 4A1.3. We acknowledged that "the mere fact" that the defendant had been previously arrested for certain crimes "could not serve as valid grounds for an upward departure." 568 F.3d at 1212. Relying on *Mateo*, however, we held that "nothing in the Guidelines excludes the district court from considering the *conduct* underlying those arrests." *Id.* We explained that while § 4A1.3 prohibits reliance "on bare reports of prior arrests," *id.* (quoting *United States v. Berry*, 553 F.3d 273, 281 (3d Cir. 2009)) (internal quotation marks omitted), "[t]he facts underlying those arrests are fair game," *id.* Because the PSR "recounted the factual bases for [the defendant's] arrests for Criminal Discharge of a Firearm in some detail[,] . . . the district court was free to rely on these facts to depart upward." *Id.*

In light of both *Mateo* and *Robertson*, it was not plainly erroneous for the district court to vary upward based in part on the other-arrests section of Mr. Soto-Arreola's PSR. The other-arrests section detailed seven arrests: six that did not result in convictions and one that resulted in deportation. Three of the arrests—for theft, criminal damage, and possession of crack cocaine—were accompanied by an adequate explanation of Mr. Soto-Arreola's underlying conduct. *See supra* note 2. Because Mr. Soto-Arreola lodged no objections to the PSR, the factual notations concerning these arrests were "fair game"

- 13 -

for the district court.  *Robertson*, 568 F.3d at 1212.  Furthermore, it would not have been clear or obvious error for the district court to rely on Mr. Soto-Arreola's prior arrest for entry without inspection because the disposition of that case—deportation to Mexico by federal authorities—suggests that the arrest had a reliable factual basis.  *See United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) ("[The defendant's] eleven prior arrests by immigration officials do not 'stand alone'—here they are corroborated by more than half a dozen deportations.  These arrests are sufficiently 'supported by evidence' to constitute reliable grounds for a variance in this case." (quoting *United States v. Jones*, 444 F.3d 430, 434 (5th Cir. 2006))).

This narrows Mr. Soto-Arreola's claim of procedural error to the other three arrest records, the ones for reckless driving, burglary, and discharge/felony obstruction.  In the PSR, these lacked any descriptive accompaniment save that "[n]o further information has been provided to the U.S. Probation Office."  R., Vol. 3, at 15.  We agree that these qualify as "bare" arrest records.  We do not agree, however, that reliance on these constituted plain error under our case law.

In *Mateo*, we faced a factual situation similar to the one here.  There, the defendant's PSR disclosed "records of seven additional prior arrests that did not lead to convictions, and one additional pending charge," 471 F.3d at 1165, but contained factual detail for only four of those arrests, *see id.* at 1165–66.  We found no error in the district court's reliance on the "uncontested facts in the PSR[,] including the number, frequency, and seriousness of Mr. Mateo's various arrests and convictions."  *Id.* at 1167.  Later, in

- 14 -

*Robertson*, we did nothing to call into question *Mateo*'s conclusion that the number, frequency, and seriousness of prior arrests are permissible considerations for upward variances, *even if* the PSR does not describe the defendant's underlying conduct.

Read in conjunction with *Robertson*, *Mateo* suggests that district courts may vary upward based not only on the *factual bases* for a defendant's arrests, but also on the *fact of* various arrests when the "number, frequency, and seriousness" of those arrests are relevant to the § 3553(a) sentencing factors. 471 F.3d at 1167. According to this reading, a district court *may* consider bare arrest records in the context of a broader criminal history in order to construct a holistic picture of the defendant that would be relevant to its sentencing analysis under § 3553(a). For purposes of our analysis under the second plain-error prong, we need not definitively opine on whether this is the correct reading of *Mateo*; it certainly is a reasonable one, and that is enough. In this regard, we note that such a reading of *Mateo* would have placed our case law in line with the approach taken by some of our sister circuits. They have suggested that a district court may rely on bare arrest records when the frequency of arrests or the nature of the charges plausibly establishes a pattern of unlawful behavior. *See Berry*, 553 F.3d at 284 ("[T]here may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore."); *United States v. Zapete-Garcia*, 447 F.3d 57, 61 (1st Cir. 2006) ("[A] series of past arrests might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions . . . ."); *United States v. Walker*,

- 15 -

98 F.3d 944, 948 (7th Cir. 1996) (stating that twenty-three offenses for which the defendant had been arrested but not convicted were valid sentencing considerations because "[t]hey were pieces in a lifelong pattern of criminality"). We conclude that the district court would not have committed clear or obvious error in sentencing Mr. Soto-Arreola in a manner consistent with this reasonable reading of *Mateo*. And, under a fair and natural interpretation of its analysis, we conclude that the district court did precisely that.

According to Mr. Soto-Arreola's PSR, he has an extensive juvenile and adult criminal history, a history that is apparent even apart from the other-arrests section of the PSR. Clearly, it was this much broader history that drove the district court's upward-variance decision. *See* R., Vol. 2, at 5 (noting Mr. Soto-Arreola's "very lengthy criminal history," including a "drug felony," "another violent felony," "gang member[ship]," "past revocations of supervision," and "history of substance abuse"); *id.* at 14 (noting that Mr. Soto-Arreola has "been in trouble since [he was] 14" and "it's been nonstop for the last nine years"). In light of that lengthy history, the district court could reasonably have considered in its § 3553(a) analysis the three bare arrest records in conjunction with the other arrest records, juvenile adjudications, and adult convictions in developing an accurate portrait of Mr. Soto-Arreola's long and unwavering pattern of unlawful behavior. We need not hold that the district court would have been correct in following this decisional course. It suffices for us to hold—and we do—that the court would not

have committed clear or obvious error in light of *Mateo* in doing so. Mr. Soto-Arreola thus fails to satisfy the second prong of plain-error review.

**B**

Although this is sufficient to dispose of Mr. Soto-Arreola's appeal, we underscore the fatal infirmities of his sentencing challenge by turning to the fourth prong of plain-error review. Under this prong, Mr. Soto-Arreola must show that the district court's procedural error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Robertson*, 568 F.3d at 1210. To evaluate this prong in the sentencing context, we look to a number of factors, the most prominent of which is whether "the district court would likely impose a significantly lighter sentence on remand." *United States v. Andrews*, 447 F.3d 806, 813 (10th Cir. 2006) (quoting *United States v. Thomas*, 410 F.3d 1235, 1249 (10th Cir. 2005)) (internal quotation marks omitted). "[W]here a defendant demonstrates a strong possibility of receiving a significantly lower sentence, the fourth prong is met." *Id.*

Mr. Soto-Arreola has not even attempted to argue that he would receive a significantly lesser sentence on remand. Nor do we think such an argument plausible. Mr. Soto-Arreola's PSR details his numerous juvenile adjudications and adult criminal convictions. In varying upward, the district court pointed to this "unrelenting criminal activity since a very young age," R. Vol. 2, at 16, as well as to his violent background, past drug usage, and gang affiliations. Furthermore, Mr. Soto-Arreola's criminal history category does not reflect his true criminal history since none of his juvenile adjudications,

and only some of his adult convictions, were assessed criminal history points. This serious pattern of unlawful activity was relevant to the sentencing factors under 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Chavez-Calderon*, 494 F.3d 1266, 1270 (10th Cir. 2007) ("The sentencing court is well within its discretion and, indeed, is required to carefully consider the facts contained in the PSR when evaluating the § 3553(a) sentencing factors, including the history and characteristics of the defendant, and the need for a sentence to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." (quoting *Mateo*, 471 F.3d at 1167) (internal quotation marks omitted)); *Mateo*, 471 F.3d at 1167 ("[N]o limitation should be placed on the information concerning the background, character, and conduct of a person . . . for the purpose of imposing an appropriate sentence." (ellipsis in original) (quoting *United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005)) (internal quotation marks omitted)).

It also provides ample support for the district court's decision to vary upward. *See United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012) (in upholding upward variance, noting that "it was reasonable for the court to read the police reports as showing conduct that fit into a pattern of criminal behavior involving the use of firearms"); *United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008) (permissible for district court to vary upward based on juvenile misconduct); *see also United States v. Shaw*, 560 F.3d 1230, 1239 (11th Cir. 2009) (upholding district court's decision to vary upward to the statutory maximum based primarily on defendant's "single-minded devotion to a life of crime"); *United States v. Solis-Bermudez*, 501 F.3d 882, 887 (8th Cir. 2007) (holding that

defendant's "history of deportation and illegal reentry, together with his serious criminal record, justified the district court's upward variance"). And, given the gravity of this criminal pattern, we are hard-pressed to conclude that on remand the district court would have imposed a "significantly lighter" sentence on Mr. Soto-Arreola. *Andrews*, 447 F.3d at 813 (quoting *Thomas*, 410 F.3d at 1249) (internal quotation marks omitted). Mr. Soto-Arreola therefore fails to satisfy the fourth prong of plain-error review.

## III

For the foregoing reasons, we **AFFIRM** Mr. Soto-Arreola's sentence.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge