**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

WILMA JEAN CLARK,

       Defendant-Appellant.

No. 04-3116

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 03-40109-01-SAC)**

---

Submitted on the briefs:[*]

Eric F. Melgren, United States Attorney, District of Kansas and James A. Brown, Assistant United States Attorney, Topeka, Kansas for Plaintiff-Appellee.

David J. Phillips, Federal Public Defender, District of Kansas and Ronald E. Wurtz, Assistant Federal Public Defender, Topeka, Kansas for Defendant-Appellant.

---

Before **SEYMOUR**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

---

[*] This case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

**LUCERO**, Circuit Judge.

In this direct criminal appeal, Wilma Clark argues that the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), renders unconstitutional her sentence for drug distribution. We consider her argument in light of the Supreme Court's recent decision in United States v. Booker, 125 S.Ct. 738 (2005). Because the court below increased Clark's term of imprisonment based on facts that it found by a preponderance of the evidence, constitutional error plagues Clark's sentence. Applying plain error review, we conclude that the sentence imposed affects Clark's substantial rights and seriously affects the fairness, integrity, and public reputation of judicial proceedings. We therefore **REMAND** for resentencing.

## I

Clark pled guilty to knowingly and intentionally distributing more than five grams of a mixture containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). At the change of plea hearing, she admitted to selling 5.48 grams of crack cocaine on June 28, 2000. Based solely on the facts to which she pled, Clark faced an offense level of 26 and a Guideline range of 110-137 months' incarceration. U.S.S.G. § 2D1.1(c)(7).

Additional conduct was detailed in the pre-sentence report ("PSR"). According to the PSR, state law enforcement officials discovered Clark either distributing or possessing crack cocaine on six separate occasions in 2003. The U.S. Probation Office recommended that the district court find Clark "responsible for" 25.45 grams of crack cocaine, which is the sum of the 5.48 grams that she distributed on June 28, 2000 and the amounts that she either possessed or distributed in 2003. Additionally, the PSR reported that on October 4, 2001, officers discovered a pistol and ammunition for various firearms in Clark's purse while executing a search warrant at her residence. Clark stated that she was holding the gun for a man who had gone to purchase cocaine, and she admitted to having sold cocaine herself two days earlier, but officers did not discover cocaine in the home. The PSR recommended enhancing Clark's base offense level for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1).

Clark objected to using the 2003 drug-related incidents to calculate her base offense level, arguing that the span of time between the offense of conviction and the 2003 events precluded considering the latter as relevant conduct for the former. Similarly, she argued that insufficient evidence linked the offense of conviction to her possession of a firearm fifteen months later, and therefore objected to an enhancement of her offense level for firearm possession. Overruling Clark's objections, the district court adopted the PSR's findings.

Because it found that Clark possessed at least 20 grams of cocaine base, the district court used a base offense level of 28. The court then enhanced the offense level to 30 because Clark possessed a firearm, and ultimately settled on an offense level of 27 after including an adjustment for acceptance of responsibility. At offense level 27, and with a criminal history category of five, Clark faced a sentencing range of 120-150 months. The district court accepted the government's recommendation and sentenced her at the bottom of the range to 120 months' incarceration.

## II

Clark argues that the district court violated her Sixth Amendment rights by imposing a sentence based on facts that it found by a preponderance of the evidence pursuant to the then-mandatory Sentencing Guidelines. Specifically, she asserts that, in light of the Supreme Court's decision in Blakely, it was constitutional error to use uncharged drug-related conduct to calculate her base offense level and to then enhance the offense level by finding that she possessed a firearm.[1] We construe Clark's argument as a challenge to her sentence under

___

[1] The dissent asserts that Clark is barred from raising this argument because she waived her right to raise a Booker argument on appeal in her plea agreement. However, the government neither filed a motion to enforce Clark's plea agreement, see United States v. Hahn, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam), nor argued in its brief that we should dismiss Clark's appeal on the basis of her appellate rights waiver. See United States v. Clayton, No. 04-3394, slip op. at 6 (10th Cir. July __, 2005). Accordingly, we decline to

Booker.  See United States v. Clifton, 406 F.3d 1173, 1175 n.1 (10th Cir. 2005)

(this court "must apply the holdings in Blakely and Booker to all cases in which a

defendant properly raised an issue under either case.").  Clark did not raise a

Booker challenge below.  Consequently, we review the district court's sentencing

decision for plain error under the four-part test articulated in United States v.

Olano, 507 U.S. 725 (1993), which asks (1) is there error; (2) is the error plain;

(3) does it affect substantial rights; and (4) does it seriously affect the fairness,

integrity, or public reputation of judicial proceedings.  United States v. Gonzalez-

Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).

A district court commits constitutional Booker error when it "applies the

Guidelines in a mandatory fashion, makes factual findings (other than the fact of

prior convictions), and imposes a sentence above the maximum that would apply

in the absence of such findings." United States v. Yazzie, 407 F.3d 1139, 1144

(10th Cir. 2005) (emphasis added).  Clark pled guilty pursuant to a plea

agreement to possession with intent to distribute more than 5 grams of cocaine

base.  In exchange for her plea, the government agreed to recommend a

three-level downward adjustment for acceptance of responsibility under U.S.S.G.

§ 3E1.1.  At her plea hearing, Clark admitted to possessing 5.48 grams of cocaine

address the issue, as it is not jurisdictional in nature.  See Hahn, 359 F.3d at
1322-25.

- 5 -

base, a drug quantity which corresponds to a base offense level of 26 under U.S.S.G. § 2D1.1(c)(7). When combined with Clark's criminal history category, an offense level of 26 exposed her to a guidelines range of 110-137 months. After subtracting three levels for acceptance of responsibility, however, Clark's maximum sentencing range based solely on facts to which she pled was 84-105 months.

Clark's acceptance of responsibility adjustment must be included in our calculation of her sentencing range to comport with the Sixth Amendment. This is so because under the pre-Booker mandatory guidelines regime, as the court explained in United States v. Colussi, 22 F.3d 218, 219 (9th Cir. 1994):

> Unlike departures under the Sentencing Guidelines, adjustments to the offense level are characteristically mandatory. The Guidelines use permissive language (i.e. "may") in the context of departures. See U.S.S.G. § 5K2.0. In the context of adjustments, the Guidelines use mandatory language. See, e.g., U.S.S.G. § 3A1, U.S.S.G. § 3B1, U.S.S.G. § 3C1; see also United States v. Mariano, 983 F.2d 1150, 1157 (1st Cir. 1993).

Section 3E1.1 thus states

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the

government and the court to allocate their resources efficiently, <u>decrease</u> the offense level by 1 additional level.

U.S.S.G. § 3E1.1(emphasis added).

Although "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right," § 3E1.1. cmt. n.3, a defendant who pleads guilty and clearly accepts responsibility under the pre-<u>Booker</u> mandatory sentencing regime most certainly was so entitled. Once a district court has found as a matter of fact that a defendant has accepted responsibility within the meaning of § 3E1.1, the court has no discretion to withhold the sentencing adjustment. <u>See</u> <u>United States v. Marquez</u>, 337 F.3d 1203, 1210 (10th Cir. 2003) (reversing district court's denial of one-level reduction under § 3E1.1(b) and stating that "a defendant who 'clearly demonstrates acceptance of responsibility for his offense' is entitled to a . . . reduction in his offense level."). As the Fifth Circuit has unequivocally asserted, once an affirmative determination of acceptance of responsibility has been made, "no sentencing discretion remains." <u>United States v. Tello</u>, 9 F.3d 1119, 1124 (5th Cir. 1993); <u>see also</u> <u>United States v. Rice</u>, 184 F.3d 740, 742 (8th Cir. 1999) ("[I]f the sentencing court finds that the defendant accepted responsibility for his or her offense and entered a timely guilty plea, then the defendant is automatically entitled to the full three-level reduction available under § 3E1.1."); <u>United States v. Townsend</u>, 73 F.3d 747, 755 (7th Cir. 1996) ("The language of § 3E1.1 is mandatory, not permissive:

When a defendant demonstrates that he is qualified for the decrease, the guideline orders the decrease."); United States v. Talladino, 38 F.3d 1255, 1264 (1st Cir. 1994) ("The language of [§ 3E1.1(b)] is absolute on its face. It simply does not confer any discretion on the sentencing judge to deny the . . . reduction so long as the [section's] stated requirements are satisfied."). Thus, when analyzing Booker error, "the maximum [sentence] that would apply in the absence of [impermissible factfinding]," Yazzie, 407 F.3d at 1144, is the guideline range supported by the facts the defendant admitted reduced by his or her acceptance of responsibility.

This makes sense because for purposes of judicial and prosecutorial efficiency, the Sentencing Commission made the manner of conviction a factor in determining punishment by offering a defendant who pleads guilty a sentencing "discount." As the court recognized in United States v. Bonanno, 146 F.3d 502, 512-13 (7th Cir. 1998), the purpose of § 3E1.1 is "to reward those who plead guilty – saving the judiciary and Government from the time, expense and effort of trial – or who take some other equivalently concrete act, such as pretrial payment of full restitution." (quotations omitted). It goes without saying that one of the primary reasons a defendant pleads guilty is to obtain the acceptance of responsibility reduction. Where the court finds a defendant has clearly accepted responsibility in a timely fashion, therefore, the maximum guidelines sentence

authorized by the defendant's guilty plea necessarily includes the three-point reduction.

In the present case, Clark pled guilty pursuant to a plea agreement in which the government agreed to recommend to the district court that Clark be given a three-point reduction for acceptance of responsibility. In other words, the acceptance of responsibility reduction was Clark's to lose. See § 3E1.1. cmt. n.3 ("Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will constitute significant evidence of acceptance of responsibility"). The PSR mirrored the government's recommendation and, in fashioning a sentence, the district court accepted these recommendations. Without the sentencing enhancements based on judge-found facts, but with the acceptance of responsibility adjustment, Ms. Clark faced an offense level of 23 with a mandatory guidelines range of 84-105 months. We therefore conclude that Clark received a sentence exceeding the maximum that would have applied had the district court not made findings with respect to the quantity of drugs or possession of a firearm.[2]

---

[2] Keeping the acceptance of responsibility reduction constant, it is clear that the two enhancements challenged in this case increased Clark's sentence above the maximum she would have received in their absence. With the acceptance of responsibility reduction, Clark faced a range of 84-105 months without the enhancements (level 23) and a range of 120-150 months with the

In Yazzie, we held that constitutional error does not occur when the sentencing court increases the sentencing range by way of judge-found facts coupled with the mandatory application of the Guidelines but the actual sentence imposed is within the non-enhanced range. Yazzie, 407 F.3d at 1145. We did not have occasion in Yazzie, however, to fully discuss what constitutes the non-enhanced range. In Yazzie, the district court rejected a three-level acceptance of responsibility reduction similar to the one issued in this case. Thus, in Yazzie, the PSR-recommended range constituted the enhanced range, and the non-enhanced range was simply the range that would have applied absent adoption of the PSR's recommended enhancements.

Here we face a very different scenario. The Government and the PSR both recommended, and the district court accepted, a three-level acceptance of responsibility reduction. This reduced sentencing range constitutes the non-enhanced range in this case. Because it is clear that the district court would have applied the three-level reduction even in the absence of the enhancements, it would be inequitable to exclude it from the non-enhanced sentence. Moreover, excluding the recommended reduction from the non-enhanced sentence, in light of the district court's determination to apply the reduction regardless of the

enhancements (level 27). Without the reduction, she faced a range of 110-137 months without the enhancements (level 26) and 151-188 months with the enhancements (level 30).

applicability of the enhancements, simply misreads the record. Therefore, we conclude the non-enhanced range in this case is 84-110 months' incarceration.

Constitutional <u>Booker</u> error plagues Clark's sentence, and all constitutional <u>Booker</u> errors satisfy the first two prongs of plain error review. To meet her burden on the third prong, Clark must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." <u>United States v. Dazey</u>, 403 F.3d 1147 (10th Cir. 2005). Our recent jurisprudence provides at least two ways that a defendant may demonstrate such a reasonable probability. First, a defendant may show that, when viewing the facts of her case in light of 18 U.S.C. § 3553(a)'s sentencing factors, the district court "would reasonably impose a sentence outside the Guidelines range." <u>Dazey</u>, 403 F.3d at 1175. Second, a defendant aggrieved by constitutional <u>Booker</u> error may show that her substantial rights were affected if she establishes a "reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence." <u>Id.</u>

There is a reasonable probability that a jury would not find beyond a reasonable doubt that Clark was responsible for at least 20 grams of crack cocaine. Under the Guidelines, a sentencing court in calculating the quantity of drugs involved in an offense should consider all quantities stemming from a

defendant's "relevant conduct." U.S.S.G. § 2D1.1, cmt. n.12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See § 1B1.3(a)(2) (Relevant conduct)."). Whether a specific offense constitutes relevant conduct to the offense of conviction depends in substantial part on whether the offenses form the "same course of conduct," which in turn depends on "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3, cmt. 9(B).[3]

Clark argues that the time interval separating the offenses alone – approximately three years – justifies the conclusion that the offenses were not part of the same course of conduct. She also argues that her alleged offenses did not become "regular" until the spring of 2003. Clark's offense of conviction occurred on June 28, 2000, when she sold 5.48 grams of crack cocaine. The PSR did not report, and the district court did not find, that Clark sold any quantity of any drug in either 2001 or 2002. The court did find that Clark sold 19.97 grams

---

[3] Additionally, an offense may be relevant conduct to the offense of conviction if the two offenses constitute a "common scheme or plan." U.S.S.G. § 1B1.3(a)(2). There is no evidence in the record to support a finding that any of the 2003 drug offenses or the conduct surrounding firearm possession in 2001 were part of a "common scheme or plan" with respect to the offense of conviction. We consider at length whether the various offenses were part of the "same course of conduct," because "[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct . . . ." § 1B1.3, cmt. 9(B).

of crack cocaine on five separate occasions between May 20, 2003 and September 23, 2003. Although the offense of conviction and the 2003 events all involved sales of small user amounts of crack cocaine, and therefore are quite similar, there is a reasonable probability that a jury would not find the showing of similarity sufficiently strong to compensate for the absence of temporal proximity or regularity. See § 1B1.3, cmt. 9(B). ("When one of the above factors is absent, a stronger presence of at least one of the other factors is required."). Consequently, there is a reasonable probability that a jury would not find beyond a reasonable doubt that Clark is responsible for over 20 grams of crack cocaine, leading us to conclude that the district court's drug quantity finding affected Clark's substantial rights.

The district court also found that Clark possessed a firearm in relation to her offense, and enhanced her sentence two levels under U.S.S.G. § 2D1.1(b)(1). When seeking an enhancement under that Guideline provision, the government bears the burden of proving "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993). At first glance, it may appear that the government must show proximity between possession of a firearm and the offense of conviction to support a § 2D1.1(b)(1) enhancement. However, courts may apply the firearm-possession adjustment if the government proves that a

close nexus exists between possession of a firearm and any drug offense, provided that the drug offense constitutes "relevant conduct" with regard to the offense of conviction. See id. ("Even when a guilty plea is entered on a single count of possession, the court must nevertheless look to the entire relevant conduct in determining the sentence. That conduct . . . includes possession of a gun while engaging in drug sales related to, though distinct from, the crime of conviction."). Thus, the questions for the fact finder in this case are whether Clark's possession of a weapon and ammunition on October 4, 2001 was closely related to a drug offense, and whether that drug offense is relevant conduct with respect to the offense of conviction on June 28, 2000.

In support of its argument that Clark possessed a weapon in relation to a drug offense, the government points to Clark's admissions to the investigating officers that she was holding the gun until its owner returned from purchasing crack cocaine and that Clark herself had sold cocaine two days earlier. Clark counters that even if she possessed a gun in relation to a drug offense, that offense is dissimilar from the offense of conviction, the two offenses are insufficiently regular, and they occurred over a year apart from each other; therefore, she argues, they do not constitute the same course of conduct. As to similarity, she states that the offense of conviction involved the sale of cocaine whereas officers did not discover any cocaine in her residence when they

discovered the firearm. Furthermore, two isolated events fifteen months apart, she argues, are not sufficiently regular or temporally proximate to justify the enhancement.

We conclude that there exists a reasonable probability that a jury would find that the fifteen month interval between the offenses renders them temporally distant, and that under the facts of this case Clark's drug-related activity was insufficiently regular. Pursuant to the Guidelines, then, a jury finding that the offense of conviction and Clark's possession of a firearm in relation to drug trafficking were part of the same course of conduct would require a strong showing of similarity between the two offenses. Clark's admission to selling cocaine two days before officers found her in possession of the firearm, and the fact that the weapon belonged to a man who was in the course of purchasing cocaine, would not have persuaded a jury that the two offenses were sufficiently similar to overcome the temporal distance between, and irregularity of, the two offenses. Moreover, applying the third Olano factor less rigidly, as we must, we are confident that there is a reasonable probability that a jury would not have found that Clark's possession of the firearm was part of the same course of conduct as her offense of conviction. See Dazey, 403 F.3d at 1174 ("We conduct this analysis less rigidly when reviewing a potential constitutional error."). Thus,

the district court's decision to adjust Clark's sentence pursuant to § 2D1.1(b)(1) affected her substantial rights.[4]

Having concluded that Clark has met her burden under the third factor of the plain error test, we now determine whether, under the fourth factor, the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Gonzalez-Huerta, 403 F.3d at 736. Because this case involves constitutional Booker error, we apply the fourth prong standard less rigidly. Clifton, 406 F.3d at 1182. To determine whether to exercise our discretion and notice the error, we consider "the strength or lack of evidence supporting the defendant's sentence under the Guidelines." Id. We also consider whether "evidence in the record demonstrates that the district court would impose the same sentence even under an advisory Guidelines system." United States v. Lawrence, 405 F.3d 888, 908 (10th Cir. 2005).

_____

[4] The relevant conduct section, U.S.S.G. § 1B1.3(a)(2), includes an offense only if three prerequisites are met: (1) the offense in question involved conduct described in §§ 1B1.3(a)(1)(A) and (B); (2) the offense would require grouping with the offense of conviction under U.S.S.G. § 3D1.2(d); and (3) the offense is part of the "same course of conduct" or "common scheme or plan" as the offense of conviction. United States v. Taylor, 97 F.3d 1360, 1363 (10th Cir. 1996). All three prerequisites must apply for an offense to qualify as relevant conduct. Because we conclude that neither the alleged 2003 drug activity nor the firearm possession form part of the "same course of conduct" or "common scheme or plan" as the offense of conviction, we need not address the first two prerequisites.

In the sentencing proceedings below, Clark forcefully disputed the court's findings with respect to the amount of drugs and possession of a firearm. See Dazey, 403 F.3d at 1178 (concluding that fourth prong is met, in part, because "Mr. Dazey vigorously contested the judge-found facts that enhanced his sentence."). Moreover, the evidence in the record by no means leads ineluctably to the conclusion that either the drug sales in 2003 or the drug activity associated with possession of a weapon in October 2001 constitute relevant conduct with respect to the offense of conviction; rather, the evidence is easily susceptible to differing interpretations by a fact finder. Furthermore, we conclude that there is a reasonable likelihood that the court would impose a lower sentence on remand. The court imposed sentence at the very bottom of the Guidelines range, suggesting that if initially afforded discretion, the court may have imposed a lower sentence. Additionally, counsel argued at the sentencing hearing that Clark "was involved in these incidents because of her addiction. She doesn't move drugs. . . . She owns up to what she does better than almost any client I think I've ever seen." On that basis, and the fact that Clark has "serious medical problems," Clark sought placement at the Fort Worth Medical Center, and the district court made that recommendation. Such arguments would be relevant to the district court's exercise of discretion when imposing sentence in light of the § 3553(a) factors.

Our final inquiry under the fourth prong is "whether the Booker error substantially increased the defendant's sentence." Clifton, 406 F.3d at 1182. Had the district court not increased Clark's sentence based on its unconstitutional findings, Clark likely would have received a sentence of 84 months. This 84-month sentence is based on the facts to which Clark pled, and accounts for the government's recommendations of an acceptance of responsibility reduction and a sentence at the bottom of the applicable range, which the district court accepted. Clark's 120-month sentence represents a substantial increase from what she likely would have received had the district court not committed Booker error.

The fourth prong of Olano speaks in the disjunctive: Our inquiry is (1) does the gulf between the constitutional sentence and the unconstitutional sentence undermine the fairness of the proceedings below; (2) does it impact the overall integrity of the sentencing process; or (3) does it implicate the public reputation of judicial proceedings. See Olano, 507 U.S. at 732 ("the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.") (emphasis added); Gonzalez-Huerta, 403 F.3d at 736. We are not prepared to say that an unconstitutionally imposed sentence leading to three years' additional incarceration is fair; nor are we prepared to say that consigning someone to three years in prison on an unlawful basis does not impact the integrity of the process;

- 18 -

finally, we doubt that the public would retain confidence in a system that would countenance such an unconstitutional sentence – thus the public reputation of judicial proceedings is implicated.

Defendants are not required to prove all three elements of the fourth prong. Even though one element would suffice, we conclude that Clark has met her burden under all three, requiring us to remand.[5]

### III

We **REMAND** this matter to the district court with instructions to vacate defendant's sentence imposed in this case and resentence defendant in accordance with <u>Booker</u>.

---

[5] Clark also argues that insufficient evidence supported the district court's findings with respect to the quantity of drugs and firearm possession. Because we vacate the sentence and remand for resentencing on <u>Booker</u> grounds, we need not address the sufficiency of the evidence argument.

04-3116, *United States v. Clark*

**O'BRIEN**, dissenting.

I respectfully DISSENT from the majority's opinion for these reasons: 1) with limited exceptions (exceptions not including *Blakely/Booker* error) Clark waived her right to appeal, her waiver is enforceable, and she cannot prevail on the issues reserved from her waiver; and 2) even if her appeal waiver is unenforceable, she presents only non-constitutional *Booker* error and her arguments fail under the plain error test.

## I. DISCUSSION

### A. Waiver of Appellate Rights

#### (1) Waiver is enforceable

We need not reach the effect of *United States v. Booker*, 125 S.Ct. 738 (2005), if any, on Clark's sentence because Clark, in her plea agreement, waived her right to appeal on the basis of *Booker*.[1] In her plea agreement, Clark stated

---

[1] If a waiver of appellate rights is enforceable, we are precluded from reaching the merits of an appeal. *United States v. Hahn,* 359 F.3d 1315, 1329 n.15 (10th Cir. 2004) (en banc). Normally, we would expect the Government to follow the procedure outlined in *Hahn* for enforcing a waiver of the right to appeal:

> henceforth, when a defendant who has waived his appellate rights in a plea agreement files a notice of appeal and the government wishes to enforce this waiver, the government will file a "Motion for Enforcement of the Plea Agreement." This motion will address the three-prong enforcement analysis provided above, but not the

she "knowingly and voluntarily waives *any* right to *any* appeal . . . on *any* matter in connection with [her] prosecution and sentence, except the defendant reserves the right to appeal the district court's findings relating to relevant conduct or the applicability of a weapons enhancement under U.S.S.G. § 2D1.1(b)." (R. Vol. 1, Doc. 39 at 5). Significantly, while Clark preserved her right to appeal specific findings the district court made in applying the guidelines, she did not preserve her right to challenge the propriety of the district court making such findings in

> underlying merits of the defendant's appeal. The defendant will then have the opportunity to respond. The Clerk of the Court will forward the government's motion, and any responding briefs, to the panel. The parties will not be directed to brief the underlying merits of the defendant's appeal.
>
> If the panel finds that the plea agreement is enforceable, it will summarily dismiss the appeal. If the panel finds the plea agreement unenforceable, it will issue a ruling consistent with this finding.

*Hahn,* 359 F.3d at 1328. In this case, I would excuse the Government from complying with this procedure because of unique circumstances. Clark filed her opening brief on July 16, 2004. The Government filed its answer brief on September 16, 2004. Clark filed her reply brief on October 4, 2004. *Booker* was not decided until January 12, 2005. Supplemental briefing was neither requested nor ordered. Under these circumstances, where the Government had no reason to suppose, during briefing of the merits of the appeal, that *Booker* would be decided as it was (applying *Blakely* to invalidate the federal sentencing guidelines insofar as they were mandatory) and that it would provide the analytic framework for our review, *see United States v. Clifton*, 406 F.3d 1173, 1175 n.1 (10th Cir. 2005) ("We must apply the holdings in *Blakely* and *Booker* to all cases in which a defendant properly raised an issue under either case."), we should rule on the enforceability of the waiver as to the *Booker* issues even without a Government motion.

- 2 -

the first instance as part of a mandatory guideline regime, which is the practice prohibited by *Booker*.

In determining whether to enforce a waiver of the right to appeal, we first determine if the appeal falls within the scope of the appellate waiver. *Hahn,* 359 F.3d at 1325. Second, we ascertain whether the defendant's waiver of appellate rights was knowing and voluntary. *Id.* Third, we evaluate whether enforcement of the appellate waiver would result in a miscarriage of justice because (1) the district court relied on an impermissible factor such as race, (2) ineffective assistance of counsel in negotiating the waiver renders the waiver invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful. *Id.* at 1325, 1327. We strictly construe the scope of appellate waivers, and "any ambiguities in these agreements are read against the Government and in favor of a defendant's appellate rights." *Hahn,* 359 F.3d at 1325 (quotation marks and citations omitted).

As to scope of the waiver, a defendant may waive her right to appeal based on *Booker* thru a plea agreement with broad language. *United States v. Green*, 405 F.3d 1180, 1189 (10th Cir. 2005). Clark's waiver is not unlike the waiver we reviewed in *Green*. *See id.* at 1183 ("'Defendant agrees to waive all appellate rights except those relating to issues raised by the Defendant and denied by the

District Court regarding the application of the Sentencing Guidelines.'"). As we said in *Green*:

> Whether Defendant's sentence violated *Booker* does not relate to "issues regarding the application of the Sentencing Guidelines" within the meaning of Defendant's appellate rights waiver. The phrase "the application of the Sentencing Guidelines" in the plea agreement, does not refer to the arguments that (1) it was constitutionally impermissible for the district court to engage in factfinding by a preponderance of the evidence to enhance Defendant's sentence beyond the Guidelines range that would otherwise apply based on the facts that Defendant admitted during the plea hearing; or (2) the district court's application of the Sentencing Guidelines in a mandatory fashion was error.

405 F.3d at 1189. *See also United States v. Porter,* 405 F.3d 1136, 1144 (10th Cir. 2005) ("Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations."). Thus, Clark's waiver included *Booker* issues within its scope.

As to whether Clark's waiver was knowing and voluntary, "[w]hen determining whether a waiver of appellate rights is knowing and voluntary, we especially look . . . to whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily . . . [and] for an adequate [Rule] 11 colloquy." *Hahn*, 395 F.3d at 1325. In her plea agreement, Clark specifically stated she "knowingly and voluntarily" waived her right to an appeal. (R. Vol. I, Doc. 39 at 5.) In her Petition to Enter Plea of Guilty, which

incorporated her plea agreement by reference, Clark reiterated  she offered her plea of guilty "freely and voluntarily . . . with full understanding of all the matters set forth in . . . this petition . . . ." (*Id.*)  Her counsel certified her offer to plead guilty was "voluntarily and understandingly made." (*Id.* at 7.)  Finally, in its Order Entering Plea, the court found Clark's plea of guilty was entered "freely, voluntarily . . . and with full understanding of its consequences." (*Id.* at 8.)  The record thus demonstrates Clark's waiver of her right to appeal was both voluntary and intelligent, and it is not stripped of this character by subsequent developments in the law. *See Green*, 405 F.3d at 1190 ("The Supreme Court has made it clear that a defendant's decision to give up some of his rights in connection with making a plea-- including the right to appeal from the judgment entered following that plea-- remains voluntary and intelligent or knowing despite subsequent developments in the law.").

As to whether enforcement of Clark's appellate waiver would result in a miscarriage of justice, the district court did not rely on an impermissible factor like race when sentencing Clark and she did not raise an ineffective assistance of counsel claim.  This limits our *Hahn* "miscarriage of justice" analysis to whether the sentence exceeds the statutory maximum or whether the waiver is otherwise unlawful.  Inasmuch as the phrase "'statutory maximum' in *Hahn* refers to the upper limit of punishment that Congress has legislatively specified for the

violation of a given statute[,]" *id.* at 1194, and there is no dispute Clark's sentence fell beneath the statutory maximum, she cannot overturn her appellate waiver on this basis.

For a waiver to be "otherwise unlawful" according to *Hahn*, "the error must seriously affect the fairness, integrity or public reputation of judicial proceedings as that test was employed in *United States v. Olano*, 507 U.S. 725 (1993)." *See Hahn* 395 F.3d at 1327 (internal quotation marks omitted). In making this determination, we consider:

> whether the plea agreement stated the appropriate statutory maximum, informed the defendant that he was giving up multiple constitutional and appellate rights in exchange for concessions from the government, and implied that the sentence would be imposed in accordance with the guidelines then in effect. We also review whether the defendant's sentence conforms with the terms of the plea agreement and the defendant's understanding of the plea.

*United States v. Maldonado,* - - F.3d - -, No. 04-3134, 2005 WL 1395112 at *2 (10th Cir. June 14, 2005). The record evinces no abridgement of this standard. Furthermore, as we discuss below, Clark makes no showing the court would have sentenced her differently under a post-*Booker* advisory scheme. Consequently, the fairness, integrity or public reputation of judicial proceedings is not implicated by enforcement of her waiver of her right to appeal. *See id.* at *3-*4. Based on the foregoing, Clark's waiver of her right to appeal on the basis of *Booker* must be enforced.

(2)     Guidelines challenges fail clear error test

Inasmuch as Clark's waiver of her right to appeal on the basis of *Booker* is enforceable, we are left with only her reservations from the waiver—challenges to the district court's application of the guidelines. "[W]e review legal questions *de novo* and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Doe,* 398 F.3d 1254, 1257 (10th Cir. 2005) (internal quotation marks omitted). "A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 892 (10th Cir. 2000) (internal quotation marks omitted). Furthermore, notwithstanding *Booker's* invalidation of the mandatory nature of the sentencing guidelines, *see* 125 S.Ct. at 745, "district courts must still consult the Guidelines and take them into account when sentencing. Thus, appellate review continues to encompass review of the district court's interpretation and application of the Guidelines." *Doe,* 398 F.3d at 1257 n.5 (internal quotation marks and citation omitted) (reviewing a pre-*Booker* sentence). *See also United States v. Souser,* 405 F.3d 1162, 1165 (10th Cir. 2005) (accord).

Clark's challenge to the district court's dangerous weapon enhancement under USSG §2D1.1(b)(1) (providing for an increase of two offense levels if a

dangerous weapon was possessed in connection with the offense) is based on an alleged weakness in temporal and spatial proximity between her possession of the .22 caliber pistol seized from her purse on October 4, 2001, and relevant drug trafficking conduct. Her challenge to the court's calculation of a base offense level of 28, *see* USSG §2D1.1(c)(6) (providing for a base offense level of 28 when the offense involves at least 20 grams but less than 35 grams of cocaine base), depends on a related weakness in the temporal and spatial proximity requirements for a determination of relevant conduct.[2] In neither instance, however, is the temporal and spatial evidence such that the district court's findings amount to clear error. I would affirm Clark's sentence on this basis and for the persuasive reasons given by the district court.

**B.     *Booker* Error**

Assuming Clark's waiver of appellate rights is unenforceable, there is no constitutional *Booker* error, only non-constitutional *Booker* error, and it fails the plain error test.

(1)     Constitutional *Booker* Error

---

[2] The district court declined to consider her challenge to the determination of relevant conduct quantity on the grounds it was untimely. *See* FED. R. CRIM. P. 32(f)(1) and (i)(3)(A). However, the court indicated that even if the objection had been timely it would have overruled it. As it does not affect the outcome of our review, we consider the challenge on its merits.

To resolve the question of the presence or absence of constitutional *Booker* error, we need look no further than the language of *Booker* and the facts to which Clark admitted in entering her plea of guilty. On December 9, 2003, Clark plead guilty to possession with intent to distribute five grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). The base offense level for this offense is 26. USSG §2D1.1(c)(7). Clark's criminal history category, to which she does not object, is V. This combination results in a guideline sentencing range of 110-137 months imprisonment. USSG Ch.5, Pt.A (sentencing table). She was sentenced to 120 months imprisonment.

*Booker* provides that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the *maximum authorized* by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. at 756 (emphasis added). The maximum sentence authorized by the facts to which Clark admitted in entering her plea of guilty is 137 months imprisonment. Her sentence, at 120 months imprisonment, does not exceed the maximum authorized sentence. For this reason alone, there is no constitutional *Booker* error, plain or otherwise. *See United States v. Yazzie,* 407 F.3d 1139, 1144 (10th Cir. 2005) ("*Booker* made clear that it is the actual sentence, not the sentencing range, that must not be

increased based upon judge-found facts in order to violate the Sixth Amendment[.]").

I am unable to find any language in *Booker* to justify the majority's decision to include a three-level adjustment for acceptance of responsibility in Clark's *non-enhanced sentence* (a phrase not found in *Booker*). *Booker* forbids only a sentence that exceeds the *maximum authorized* by facts either admitted by the defendant or established by a jury verdict. Inasmuch as Clark entered a plea of guilty, the only conceivable basis for including the adjustment for acceptance of responsibility in the *maximum authorized* sentence is that the facts necessary to support the adjustment were admitted by Clark in connection with her plea or at a later time—and this is decidedly not so.

An admission is a statement offered against a party. *See Weeks v. Indep. Sch. Dist. I-89,* 230 F.3d 1201, 1209 (10th Cir. 2000); FED. R. EVID. 801(d)(2). In a criminal proceeding, an admission operates against a defendant's penal interest. *See* MCCORMICK ON EVIDENCE, § 254 (5th ed. 1999). By comparison, facts necessary to support an adjustment for acceptance of responsibility are of quite the opposite character. Whether introduced by the defendant or the government, such facts operate in favor of a defendant's penal interest. Therefore, such facts are not admissions at all and do not enter into the calculus of the *maximum authorized* sentence or, to use the majority's phraseology, the

*non-enhanced sentence.* As a result, the majority's observation that an adjustment for acceptance of responsibility is mandatory under the guidelines once the facts to support it are established, while true, is immaterial to an inquiry as to the presence or absence of constitutional *Booker* error.

The majority's new rule—that the *maximum authorized* or *non-enhanced* sentence includes an uncontested downward adjustment for acceptance of responsibility—does not derive from *Booker*. As the opinion quietly admits, it rests on equitable considerations. In common parlance, fairness, like beauty, may be a matter of perspective. But for our purposes, and regardless of perception, a result cannot be fair unless the method of reaching it is legally ordained.

(2) Non-constitutional *Booker* error

To be sure, there is non-constitutional *Booker* error in Clark's sentencing. *See United States v. Gonzalez-Huerta,* 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc) (non-constitutional *Booker* error occurs where sentence is under mandatory guidelines even though based on facts admitted by defendant or proven to jury beyond a reasonable doubt). Clark did not object. We thus review for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights[.]" *Id.* at 732 (internal quotation marks omitted). "[A] court may exercise its discretion to notice a [plain] error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736. *See*

- 11 -

*also* FED. R. CRIM. P. 52(b) (appellate court enjoys discretion to notice plain

error). The first two prongs of the plain error test are satisfied. *See Gonzalez-*

*Huerta,* 403 F.3d at 732. We may avoid discussion of whether the third prong is

satisfied and resolve this appeal on the basis of the fourth prong. *See id.* at 736

(permitting resolution of plain error claim on third or fourth prong).

"[W]e will not notice a non-constitutional [*Booker*] error, such as the one in

the case before us, unless it is both particularly egregious and our failure to notice

the error would result in a miscarriage of justice." *Id.* (internal quotation marks

omitted). This standard is demanding, and the defendant bears the burden of

meeting it. *Id.* at 737. Several of the factors we consider are:

> a showing that the district court would likely impose a significantly
> lighter sentence on remand, a substantial lack of evidence to support
> the sentence the Guidelines required the district court to impose,
> and/or a showing that objective consideration of the 18 U.S.C. §
> 3553(a) factors warrants a departure from the sentence suggested by
> the Guidelines.

*United States v. Thomas*, - - F.3d - -, No. 04-8066, 2005 WL 1395114 at *11

(10th Cir. June 14, 2005).

In considering the foregoing factors, it is useful to weigh the district

court's comments at sentencing:

> In determining the sentence to be imposed the Court has taken into
> consideration the offense, your personal history and characteristics
> and your specific involvement in this offense. After considering
> those matters, the Court has decided to sentence the defendant to 120
> months custody. . . . This sentence represents the low end of the

guideline range which the Court believes will meet the objectives of punishment.

(R. Vol. 2 at 10-11.)

First, contrary to what the majority opinion asserts, neither these comments nor the balance of the record show the district court would likely impose a significantly lighter sentence under an advisory guideline regime  The mere fact Clark received a sentence at the bottom of the applicable guideline range does not, on its own, tend to this conclusion.  It is true the court recommended Clark be transferred to the Fort Worth Medical Center.  However, this evidences only that the court recognized Clark had a drug problem and needed medical treatment. It does not demonstrate the court would have sentenced differently had it not believed it was bound by the guidelines.  Second, there is ample evidence to support the sentence the guidelines required the district court to impose.  Third, nothing in the record, after an objective consideration of the factors stated in 18

U.S.C. § 3553(a),[3]

[3]   **Factors to be considered in imposing sentence**.  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider –

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed –
>
> > (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B)   to afford adequate deterrence to criminal conduct;
> >
> > (C)   to protect the public from further crimes of the defendant; and
> >
> > (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)   the kinds of sentences available;
>
> (4)   the kinds of sentence and the sentencing range established for –
>
> > (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
>
> (5)   any pertinent policy statement –

warrants a departure from the sentence indicated by the guidelines.

Clark has not demonstrated the presumed error in her sentence is particularly egregious and failure to notice it would constitute a miscarriage of justice. Therefore, Clark's sentence does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Since Clark fails to satisfy the fourth-prong of the plain error test, there is no plain error.

I would affirm Clark's sentence.

---

                    (A)    issued by the Sentencing Commission . . . .

       (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

       (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).