FILED
United States Court of Appeals
Tenth Circuit

January 22, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

DANIEL WILLIAM WASHINGTON,

　　　　Defendant - Appellant.

No. 13-5076
(D.C. No. 4:12-CR-00214-JHP-1)
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

　　　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

　　　　Defendant and appellant, Daniel William Washington, seeks to appeal the sentence imposed following his plea of guilty to assault resulting in serious bodily

---

　　　　[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

injury in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 113(a)(6). Concluding that Mr. Washington has validly waived his right to appeal his correctly calculated sentence, we dismiss this appeal.

## BACKGROUND

On November 28, 2012, Mr. Washington visited his girlfriend's house in Indian country. His girlfriend lived next door to two women, Lu Ann Tuthill and Sarah Decorah. Mr. Washington walked from his girlfriend's house to the house next door and loudly knocked on the door. When Ms. Tuthill answered the door, Mr. Washington struck her with a miniature baseball bat, hitting her multiple times and causing her bodily injury. Ms. Decorah then came to the door, where Mr. Washington struck her on the head with the same bat. As a result of this blow, Ms. Decorah suffered a severe laceration to her head and was immediately transported to a hospital for treatment. Ms. Decorah received eight staples in her head, and has permanent scars from the wound.

On February 5, 2013, Mr. Washington pled guilty to one count of assault resulting in serious bodily injury in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153 and 113(a)(6). The plea agreement contained the following language:

> I, DANIEL WILLIAM WASHINGTON, admit that on November 28, 2012, I struck an Indian female in the head with a miniature baseball bat and as a result she suffered serious bodily injury. I am an Indian.

> The victim was an Indian. This took place in Indian Country in the Northern District of Oklahoma.

Plea Agreement at 7, R. Vol. 1 at 18. Mr. Washington further stipulated to two additional facts: "The miniature baseball bat used during the assault[] identified in Count 2 is a dangerous weapon as defined in [United States Sentencing Commission, Guidelines Manual ("USSG")] § 1B1.1, App. Note 1 (D)." Id. at 23. Mr. Washington also stipulated that "the victim was treated at a hospital, received stitches and has permanent scarring on her head . . . . [T]he victim sustained serious bodily injury as defined in USSG § 1B1.1, App. Note 1 (L)." Id. Mr. Washington initialed each page of the plea agreement.

At the change-of-plea hearing, in which he pled guilty, Mr. Washington verbally affirmed his guilt, stating:

> On November 28th, 2012, in Quapaw, Oklahoma, which is in the Northern District of Oklahoma, I assaulted an Indian female with a souvenir baseball bat that caused a cut on her head which required staples. My lawyer informed me that the assault occurred in Indian Country. I am an Indian.

Tr. of Hr'g at 16, R. Vol. 2 at 39. The district court also verbally confirmed that Mr. Washington was aware of the stipulations contained in the plea agreement regarding the bat as a dangerous weapon and the serious bodily injury suffered by the victim.

The plea agreement also contained an appellate waiver:

> In consideration of the promises and concessions made by the United States in this plea agreement, the defendant knowingly and

> voluntarily agrees to the following: . . . [t]he defendant waives the
> right to directly appeal the conviction and sentence.

Plea Agreement at 3, R. Vol. 1 at 14. The agreement provided, however, that Mr.

Washington expressly "reserves the right to appeal from a sentence which exceeds

the statutory maximum or the applicable sentencing guideline range." Id.

Finally, the plea agreement stated that, "[t]he defendant expressly acknowledges

that counsel has explained his appellate and post-conviction rights; that defendant

understands his rights; and that defendant knowingly voluntarily waives those

rights as set forth above." Id. at 15.

During the change-of-plea colloquy, the magistrate judge further confirmed

that Mr. Washington understood the charges against him and the plea agreement,

and that he was "freely and voluntarily" in agreement with the agreement and its

terms.

In preparation for sentencing, the United States Probation Office prepared a

presentence report ("PSR"). The PSR calculated a base offense level of 14 for the

aggravated assault, in accordance with USSG § 2A2.2. Pursuant to USSG

§ 2A2.2(b)(2)(B), the PSR added four offense levels because Mr. Washington

used a dangerous weapon; under USSG § 2A2.2(b)(3)(B), five offense levels were

added because the victim suffered serious bodily injury. After deducting three

points for acceptance of responsibility, the PSR determined that the total offense

level was 20. With a criminal history category of III, the PSR ultimately calculated an advisory sentencing range of 41 to 51 months.

At his sentencing hearing, Mr. Washington made no objections to the PSR. The district court then adopted the PSR "as the factual basis for the sentence in this matter" and adopted the plea agreement. The district court subsequently sentenced Mr. Washington to 41 months, the low end of the applicable advisory guideline range. Mr. Washington seeks to appeal that sentence, despite his appellate waiver.

He frames the issue on appeal as follows: "Whether a four offense level increase, based on the dangerous weapon offense characteristic in USSG § 2A2.2(b)(2)(B), was plain error, where an essential fact—intent to cause bodily injury—was omitted from the PSR and was not found by the district court." Appellant's Br. at 1. Mr. Washington avers that the commentary to USSG § 2A2.2(b)(2)(B) instructs that the adjustment is applicable to a case involving a dangerous weapon with intent to cause bodily injury; the PSR did not state that intent to cause bodily injury existed and the district court adopted the PSR, thereby adopting the lack of any intent to cause bodily harm. He argues this error meets the plain error standard. He accordingly avers that his appeal is not barred by the appellate waiver, because his sentence exceeded the "applicable" sentencing range.

## DISCUSSION

We first consider whether the government seeks enforcement of the appellate waiver or has, itself, waived the enforcement of the waiver. While it appears the government has not filed a motion specifically to enforce that appellate waiver, it argues for its enforcement in its brief. That is sufficient. <u>Cf. United States v. Clark</u>, 415 F.3d 1234, 1237 n.1 (10th Cir. 2005). We turn, therefore, to the validity of the waiver.

When considering whether to enforce an appellate waiver, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." <u>United States v. Hahn</u>, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

The first part of the <u>Hahn</u> inquiry is the issue on which Mr. Washington and the government primarily diverge. Mr. Washington waived his right to appeal any sentence *unless* it exceeded the statutory maximum or the applicable advisory guidelines range. His sentence, as imposed, falls within the advisory guideline range as calculated by the district court. It would therefore seem to fall within the scope of the appellate waiver. Mr. Washington argues, however, that the district court erred in calculating his sentence, and the sentence therefore exceeds the "applicable sentencing guideline range," as stated in his appellate waiver.

-6-

Mr. Washington places great weight on the word "applicable." He argues, in essence, that it imports some objective idea of correctness into his sentence calculation. Thus, the argument goes, the district court in fact erred in calculating his sentence, so the district court "exceeded" the "applicable" guideline range.

We disagree with this argument, which constitutes Mr. Washington's effort to evade his appellate waiver. We stated in United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007) that, "[t]o allow alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive."[1] See United States v. O'Neill, 438 Fed. Appx. 661, 662-63 (10th Cir. 2011) (unpublished) ("Because [defendant] is raising sentencing issues, his appeal necessarily is within the scope of the waiver. . . . To hold the appeal waiver does not encompass sentencing errors 'would nullify the waiver based on the very sort of claim it was intended to waive,' and would ignore the concession in the plea agreement that the applicable guideline range is the one the district court determines is appropriate.") (quoting Smith, 500 F.3d at 1213); United States v. Lamberti, 434 Fed. Appx. 733, 735 (10th Cir. 2011) (unpublished) (same)[2]; see also United States v. Howle, 166 F.3d

_____

[1]Mr. Washington suggests that Smith is inapplicable to his challenge to the scope of his waiver, because the specific language quoted occurred in the context of an analysis of the miscarriage of justice part of the Hahn inquiry. We do not view the language and reasoning of Smith to be so narrowly confined.

[2]We cite these unpublished cases because they simply reinforce established
(continued...)

-7-

1166, 1169 (11th Cir. 1999) ("A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error."). These authorities refute Mr. Washington's argument. And the "applicable" guideline range is, as these cases suggest, simply the one calculated by the district court, whether susceptible to challenge or not. We accordingly find that Mr. Washington's appeal falls within the scope of the appellate waiver.

Continuing our analysis of the validity of Mr. Washington's appellate waiver, we next consider whether Mr. Washington's waiver was knowing and voluntary. In determining whether he knowingly and voluntarily waived his appellate rights, we consider "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and whether there is "an adequate Federal Rule of Criminal Procedure 11 colloquy." Hahn, 359 F.3d at 1325. Mr. Washington bears the "burden to present evidence from the record establishing that he did not understand the waiver." United States v. Edgar, 348 F.3d 867, 872-73 (10th Cir. 2003). In this case, the language of the appellate waiver was clearly stated in the plea agreement. Moreover, Mr. Washington expressly acknowledged in the plea agreement that his attorney explained his appellate rights, that he understood the terms of the waiver and that

[2](...continued)
authority from this Circuit with which we agree.

he knowingly and voluntarily waived the appellate rights set forth in the plea agreement. Additionally, there was a full colloquy between the court and Mr. Washington, through which the magistrate judge informed Mr. Washington of the appellate waiver and determined that Mr. Washington understood the rights he was waiving. In sum, Mr. Washington has failed to meet his burden of showing that he did not understand the waiver or that his waiver was not knowing and voluntary.

Finally, we consider the final Hahn factor–whether enforcement of the waiver would result in a miscarriage of justice. We have held that a miscarriage of justice occurs when "(1) the district court relied on an impermissible factor such as race, (2) ineffective assistance of counsel in negotiating the waiver renders the waiver invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful." United States v. Clark, 415 F.3d 1234, 1245 (10th Cir. 2005) (citing Hahn, 359 F.3d at 1325, 1327). In order for a waiver to be "otherwise unlawful," the "error must seriously affect the fairness, integrity or public reputation of judicial proceedings as that test was employed in United States v. Olano, 507 U.S. 725 (1993))." Id. at 1246. None of these factors are present in this case, where Mr. Washington was sentenced within the properly calculated advisory guidelines range. Mr. Washington's appellate waiver should accordingly be enforced.

Even were we to find the waiver unenforceable for some reason, Mr. Washington's challenge to his sentence would fail on its merits. He argues the district court erred in calculating his sentence by failing to make a specific finding that he had used a dangerous weapon (the bat) with the intent to cause bodily injury. As the government notes, this argument suggests that the relevant Guidelines provision (USSG § 2A2.2(b)(2)) requires that such a finding of intent be made explicitly on the record. Mr. Washington also suggests that application of that Guidelines provision involves impermissible double-counting. These arguments are unavailing. See United States v. Jones, 332 F.3d 1294, 1307 n.18 (10th Cir. 2003); United States v. Duran, 127 F.3d 911, 917-18 (10th Cir. 1997); United States v. Garcia-Camacho, 122 F.3d 1265, 1267 (9th Cir. 1997); United States v. Tolbert, 668 F.3d 798, 803 (6th Cir. 2012); United States v. Williams, 954 F.2d 204, 206 (4th Cir. 1992). Mr. Washington's use of the bat to strike the two women in this case (as established in his plea agreement, at the change of plea hearing, and in the PSR) certainly demonstrates a high risk of inflicting injury. Nothing more was required. The district court did not err in applying USSG § 2A2.2(b)(2), even without some more specific finding regarding specific intent.

It is accordingly clear that the appellate waiver contained in Mr. Washington's plea agreement should be enforced. We therefore dismiss this appeal.

**CONCLUSION**

For the foregoing reasons, we DISMISS this appeal.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge